[No. D035655. Fourth Dist., Div. One. Jan. 14, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN MARKEL SNOW, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and IV.

272

**COUNSEL**

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Carl H. Horst and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McDONALD, J.**—The California Supreme Court granted a petition for review of our opinion in this case filed February 15, 2002, and subsequently on November 26, 2002, transferred the case to this court with directions to vacate our decision and reconsider the cause in light of *People v. Acosta* (2002) 29 Cal.4th 105 [124 Cal.Rptr.2d 435, 52 P.3d 624]. Pursuant to our request, the parties submitted supplemental briefs discussing the import of *Acosta* on this case. The opinion of this court filed February 15, 2002, is vacated and we issue this new opinion in accordance with the directions of the California Supreme Court.

A jury found appellant Steven Markel Snow guilty of one count of committing lewd and lascivious conduct with a minor under the age of 14. (Pen. Code, § 288, subd. (a).)[2] At a bifurcated trial the court found true that Snow:

1. had suffered two prior serious felony convictions (§§ 288a, subd. (c)(1), 288, subd. (a)) within the meaning of sections 667, subdivision (a)(1) and 1192.7, subdivision (c)(6);

2. had suffered a prior conviction of a lewd act (§ 288, subd. (a)) under section 667.61, subdivisions (a), (c)(7) and (d)(1) (the one strike law);

3. had suffered two prior serious or violent felony convictions (§§ 288a, subd. (c)(1), 288, subd. (a)) within the meaning of section 667, subdivisions (b)-(i) (the three strikes law); and

4. was a habitual sex offender within the meaning of section 667.71, subdivisions (a), (c)(4) (the habitual sex offender law) because of a prior conviction of a lewd act (§ 288, subd. (a)).

The court sentenced Snow to a prison term of 85 years to life, consisting of a 25-year-to-life term under the one strike law, which it then tripled under the three strikes law, plus a 10-year consecutive term for the two prior serious felony convictions. The court stayed under section 654 execution of sentence on the finding Snow was a habitual sex offender (§ 667.71).

---

[2]All further statutory references are to the Penal Code unless otherwise specified.

On appeal, Snow contends the trial court erred by admitting into evidence over his objection a videotape of the victim's conversation with a social worker and by imposing an unauthorized sentence.

I

FACTS

A. *Prosecution Case*

1. *The Molestation*

During the weekend of November 14, 1999, Angela D. and her five-year-old son, Joshua, were homeless. They were allowed to temporarily stay at an apartment occupied by Mr. Malcolm and Snow while Angela looked for permanent shelter.[3] Malcolm arranged for Angela and Joshua to sleep in the bedroom.[4] November 15 was uneventful.

About 9:30 a.m. the following morning, Angela went to the bedroom and made several telephone calls seeking shelter. She placed Joshua in the living room to watch a videotape. Snow was also in the living room. Angela then returned to the bedroom, closed the door, and continued making telephone calls. While alone with Joshua, Snow orally copulated him.

About 9:42 a.m., Angela completed a telephone call, opened the door, and looked into the living room. She saw Snow kneeling in front of Joshua. Joshua's drawstring shorts and underwear were down and his penis was exposed. Joshua caught sight of Angela and ran to her, clinging to her and calling "mommy." Angela was unsure of what she saw and remained outwardly calm. She took Joshua to the bedroom and asked him what happened. He would not tell her anything except that he would be in trouble if he told her.

During the next hour, Joshua would not leave Angela's presence. When she and Joshua left the apartment, Snow followed them. Angela asked Snow why he was following them but Snow did not answer. Angela and Joshua stopped in front of a store and Snow stopped beside them. Angela asked Joshua whether something had happened that he needed to tell her, and then kneeled in front of Joshua and said, "Tell me what happened." Joshua

---

[3]Angela had a prior romantic relationship with Mr. Malcolm and had spent many previous nights at the apartment; on those occasions she and Mr. Malcolm occupied the bedroom while Snow slept in the living room.

[4]At some time in the middle of that night, Malcolm left the apartment and did not return.

replied, "Mommy, he sucked my peepee." Angela felt as though she would "freak out," but maintained her composure.

Angela and Joshua, followed by Snow, walked toward the house of a friend (Deanna), where Angela and Joshua stopped. Snow stopped at a nearby house from which people were moving and "got busy looking at some stuff in [the] yard." When Angela and Joshua entered Deanna's house, Joshua spontaneously told Deanna about Snow's molestation. Angela used Deanna's telephone to call a friend at child protective services and tell her about the molestation; her friend advised her to call 911. Deanna asked that Angela not use their phone to call 911 because there were drugs in the house; Angela therefore walked to a nearby store from which she called police.

When police arrived, Angela told them what Joshua had told her. Police questioned Joshua and then transported Angela and Joshua to Children's Hospital. Ms. Davies, a licensed clinical social worker at the hospital, interviewed Joshua according to a standard protocol; the interview was videotaped, and a copy was admitted at trial after Snow's objection was overruled. Joshua told the social worker Snow had orally copulated him.

After the interview, a doctor performed an anal examination of Joshua and found no abnormalities. The doctor also collected fluoresced materials from Joshua's body using a sexual assault kit, collecting swab samples from his penis, anus, mouth, left thigh, left calf and right knee. The samples were later tested by Cellmark, a company specializing in DNA testing, and by the San Diego Police Department Crime Lab. The oral swabs produced a weak positive result for the presence of an enzyme associated with semen, although it is not uncommon for saliva to produce a similar reaction. An amylase test was also performed.[5] Amylase was found in a sample taken from Joshua's left thigh.

The PCR DNA comparison between Snow's DNA sample and the samples taken from Joshua's mouth and penis showed Snow's DNA type was present. Cellmark confirmed the match by comparing extracted DNA from the sample taken from Joshua's penis with Snow's DNA sample.[6]

### 2. Prior Molestations

In 1989 Snow was convicted of committing a lewd act on minor female Amber A. (§ 288, subd. (a)). In 1981 he was convicted of sexually assaulting minor female Courtney C. (§ 288a, subd. (c)(1)).

---

[5]Amylase is a component found in high concentration in saliva, but also can be found in perspiration, feces, mucous membranes or areas where bodily secretions are present.

[6]The frequency of the match is approximately one in 150,000 for Caucasians, one in 150,000,000 for African Americans, and one in 690,000 for Hispanics.

### B. *Defense*

Snow denied having any sexual desire for Joshua and denied touching him. Several defense witnesses were called to impeach Angela.[7] The defense also introduced evidence that the version of the events given by Joshua to Officer Sherman was in part untruthful.[8]

A scientist criticized the testing done by the San Diego Police Department Crime Lab. He opined the presence of Snow's DNA on Joshua, as well as the amylase found on Joshua's thigh, could be attributable to benign explanations.

## II

### ANALYSIS OF THE VERDICT*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## III

### ANALYSIS OF THE SENTENCE

Snow argues the court committed two distinct sentencing errors. First, he argues that his prior conviction under section 288a, subdivision (c)(1) does not qualify as a prior serious felony conviction under section 667, subdivision (a) or a prior serious or violent felony conviction under the three strikes law, and therefore it was error to use that prior conviction either to add the section 667, subdivision (a) enhancement to his sentence or to triple his sentence under the three strikes law. Second, he argues that even with two prior serious felony convictions, the trial court could not first elevate his sentence under the one strike law and then triple that elevated sentence under the three strikes law; the one strike and three strikes laws are mutually exclusive rather than cumulative sentencing schemes.

---

[7]For example, Angela told Officer Reschke that when she entered the room she noticed only that Joshua was holding up his pants. She also falsely told Reschke she had been raped the previous week. Angela told Officer Kramer that after leaving Snow's apartment they went into an antique store to enlist the help of a woman there; the evidence showed the store was ordinarily closed on Sundays and Mondays. Angela's ex-husband and a social worker who had previously helped her testified that Angela was not a truthful person.

[8]Joshua was developmentally disabled and suffered from attention deficit disorder, mild mental retardation and cerebral palsy. Joshua told Officer Sherman that Snow had threatened to "computerize" Joshua, had touched Joshua's genitals with a knife, and had sodomized him, causing him to bleed from his anus. Joshua also told Sherman that Snow had held a knife to Joshua's throat and had pointed a gun at Angela.

*See footnote 1, *ante*, page 271.

## A. *A Prior Section 288a, Subdivision (c) Conviction Is a Prior Serious Felony Conviction*

■ After the initial briefing was completed in this case, the Supreme Court filed its opinion in *People v. Murphy* (2001) 25 Cal.4th 136 [105 Cal.Rptr.2d 387, 19 P.3d 1129] (*Murphy*), which held at pages 141 to 149 that a conviction under section 288a, subdivision (c)(1) is a serious felony conviction for purposes of section 667, subdivision (a) and the three strikes law because it is a conviction for a lewd act on a child under the age of 14 years under section 1192.7, subdivision (c)(6). Snow's first contention of sentencing error has not been accepted by the Supreme Court.

## B. *Cumulative Sentencing Under the One and Three Strikes Laws*

■ The court found Snow had two prior convictions: one for violating section 288, subdivision (a), and a second for violating section 288a, subd. (c)(1). Both prior convictions are prior serious or violent felony convictions within the meaning of the three strikes law. The section 288, subdivision (a) conviction also qualifies as a "circumstance[] specified in subdivision (d)" of section 667.61, subjecting Snow to sentencing under the one strike law. We assess two questions. First, may a court apply the one strike and three strikes laws cumulatively or are they alternative sentencing schemes? Second, if the one strike and three strikes laws are cumulative sentencing schemes, and a defendant has only two prior strike convictions, one of which is a qualifying prior conviction under the one strike law (§ 667.61), may the court first impose a sentence for the current offense using the elevated sentence under the one strike law and then use both prior strike convictions under the three strikes law to triple the elevated one strike law sentence?

### *The Cumulation Question*

The court in *Murphy* did not decide whether the one strike and three strikes laws are cumulative rather than alternative sentencing schemes. (*Murphy, supra,* 25 Cal.4th at p. 159, fn. 9.) However, in *People v. Acosta, supra,* 29 Cal.4th 105, 118-128, the Supreme Court held the one strike and three strikes laws are to be applied cumulatively. We therefore must conclude under *Acosta* that the trial court here correctly cumulatively applied the one strike and three strikes laws because the conditions for cumulative application existed.

### *The Double-use Issue*

We also must conclude, under the authority of the majority opinion in *People v. Acosta, supra,* 29 Cal.4th 105, 128-134, that cumulative application

of the one strike and three strikes laws does not concomitantly require the cumulative application of any limits contained in those statutes, including the limitation contained in section 667.61, subdivision (f).

Under section 667.61, subdivision (a), a person convicted of a qualifying current offense "under one or more of the circumstances specified in subdivision (d)"[15] must receive a life sentence with a minimum term of 25 years. However, subdivision (f) provides: "If only the minimum number of circumstances specified in subdivision (d) . . . [that] are required for the punishment provided in subdivision (a) . . . to apply have been pled and proved, *that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) . . . rather than being used to impose the punishment authorized under any other law*, unless another law provides for a greater penalty. However, if any additional circumstance or circumstances specified in subdivision (d) . . . have been pled and proved, the minimum number of circumstances shall be used as the basis for imposing the term provided in subdivision (a), and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any other law." (Italics added.)

Snow argues that the italicized portion of subdivision (f) provides that one of his prior convictions must be used exclusively to impose the 25-year-to-life sentence required by section 667.61, subdivision (a). Although this language appears to evidence a legislative intent that a subdivision (d) *circumstance* is limited to a single use because it states the prior conviction "shall be used" to impose the section 667.61 term *"rather than being used to impose the punishment authorized under any other law,"*[16] the majority in *Acosta* held otherwise. *Acosta* held that although one of Snow's prior convictions must be used to sentence him under section 667.61 *rather than* to impose other punishments, it can also be used as a prior strike conviction in calculating the cumulative effect of the three strikes law on the one strike

---

[15]Section 667.61, subdivision (d) provides, in part: "The following circumstances shall apply to the offenses specified in subdivision (c): [¶] (1) The defendant has been previously convicted of an offense specified in subdivision (c) . . . ." Snow's previous section 288, subdivision (a) conviction is a qualifying circumstance under this provision. (§ 667.61, subd. (c)(7).)

[16]The second sentence of subdivision (f) would seem to confirm this intent by providing that "if any additional circumstance or circumstances specified in subdivision (d) . . . have been pled and proved, the minimum number of circumstances shall be used as the basis for imposing the term provided in subdivision (a), and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any other law. . . ." Arguably, it would be superfluous to specify that only the minimum number of circumstances be used to warrant a section 667.61 sentence if use of that circumstance did not exhaust its impact on sentencing under other sentencing schemes.

law.[17] (*People v. Acosta, supra,* 29 Cal.4th at pp. 128-130.) Under *Acosta,* the trial court here correctly imposed a section 667.61 sentence based on Snow's prior section 288, subdivision (a) conviction and also correctly used that conviction (together with his § 288a, subd. (c)(1) conviction) to triple his section 667.61 sentence under the three strikes law.

Accordingly, Snow's cumulative sentence under the one strike-three strikes option results in a sentence of 85 years to life, composed of a term of 25 years to life under section 667.61, subdivision (a), tripled under section 667, subdivision (e)(2), plus two 5-year enhancements under section 667, subdivision (a)(1). Under *Acosta,* both prior serious felony convictions are also available for purposes of the five-year section 667, subdivision (a)(1) enhancement. (*People v. Acosta, supra,* 29 Cal.4th at pp. 129-130; *People v. Johnson* (2002) 96 Cal.App.4th 188, 198 [116 Cal.Rptr.2d 742], disapproved on other grounds in *Acosta,* at p. 134, fn. 13.)

C. *Sentencing Under the Habitual Sex Offender and Three Strikes Laws*

 In the proceedings below, the court imposed the 25-year-to-life sentence required by the section 667.71 habitual sex offender law, but stayed execution of the sentence under section 654.[18] We examine the interplay between the habitual sex offender and three strikes laws.

In *Murphy,* the trial court imposed a 25-year-to-life term for each of the two current section 288, subdivision (a) convictions even though it had found true the allegations that the defendant had sustained two prior convictions (a violation of § 288a, subd. (c)(1) and a violation of § 288, subd. (a)) that qualified as strike convictions under the three strikes law. (*Murphy, supra,* 25 Cal.4th at pp. 140-141.) The Court of Appeal in *Murphy* held the trial court's sentence was improper, reasoning the trial court should have imposed a 25-year-to-life term under the habitual sex offender law and then tripled that 25-year-to-life term under the three strikes law because of the defendant's two prior strike convictions. (*Ibid.*) The Supreme Court in *Murphy* agreed that the Court of Appeal's approach properly implemented

---

[17]The same section that limits a court to a single use of the prior conviction would appear to confirm that section 667.61 was not intended to be exclusive of other laws, including the three strikes law. It states that when a defendant has a second prior conviction that would be an "additional circumstance," the first conviction is used to impose the section 667.61 sentence and the remaining prior convictions "shall be used to impose any punishment or enhancement authorized under any other law." The three strikes sentencing scheme would seem to qualify as a "punishment . . . authorized under any other law."

[18]In a nonpublished portion of this opinion, we concluded that under *Acosta,* cumulative sentencing under the one and three strikes laws is proper. In another nonpublished portion, we conclude a court may not punish Snow both under the one strike/three strikes laws and under the habitual sex offender/three strikes law.

the statutory scheme, holding at pages 154 to 160 that the habitual sex offender law and the three strikes law are cumulative rather than alternative sentencing schemes. *Murphy* disagreed with the defendant's argument that section 654 barred cumulative use of the habitual sex offender and three strikes laws. *Murphy* noted that section 654 barred punishing the same "act or omission . . . under more than one provision," and that calculating the measure of punishment for a current offense under the habitual sex offender law and three strikes law was not punishment under more than one provision. Rather, a sentence computed by reference to recidivist statutes is punishment under one provision imposed because of the repeat offender's status and is not additional punishment for the current offense. *Murphy* concluded that because application of the habitual sex offender law and the three strikes law depended on the defendant's status, applying both to determine his sentence for the current offense did not violate section 654.

Under *Murphy*, therefore, the trial court below properly imposed on Snow a sentence of 85 years to life, consisting of a 25-year-to-life term under the habitual sex offender law, which term would be tripled under the three strikes law based on Snow's two prior strike convictions, plus a 10-year consecutive term under section 667, subdivision (a) for the two prior serious felony convictions.

### D. *Punishment Under Both the One Strike and Habitual Sex Offender Laws*

We have concluded Snow's conviction for a current single underlying offense, coupled with the true findings on his prior convictions, permits a court to punish him (1) cumulatively under the one strike and three strikes law; or (2) cumulatively under the habitual sex offender and three strikes laws. We now consider whether the court is required (or permitted) to sentence him under all three laws. We conclude the court is precluded from sentencing Snow under both the one strike and habitual sex offender laws.

Section 667.61 was enacted in 1994 and contemporaneously former section 667.71, subdivision (c) was amended to provide that "[a]t the request of the prosecutor and in lieu of the punishment specified [by section 667.71], the court shall order that the defendant be punished pursuant to [section 667.61], if applicable." (See Stats. 1994, ch. 447, §§ 1, 2, pp. 2412-2415; Stats. 1994, 1st Ex. Sess., ch. 14, §§ 1, 2, pp. 8570-8572.) Therefore, for offenses committed during the effective period of former section 667.71, subdivision (c), as amended in 1994, it appears that the sentencing schemes set forth in section 667.61 and in section 667.71 were alternative sentencing

schemes: the prosecutor could request sentencing under section 667.61 *in lieu* of sentencing under section 667.71. This court so held in *People v. Johnson, supra,* 96 Cal.App.4th 188, 203-207, which concluded that under section 667.71, subdivision (c) in effect as amended in 1994, a sentence after conviction of an offense subject to the sentencing schemes of both section 667.61 and section 667.71 could be imposed under either but not both.

In 1998 the *in lieu* language of section 667.71, subdivision (c) was repealed by the Legislature. (Stats. 1998, ch. 925, § 3.) The offense for which Snow was convicted and sentenced in this case was committed in 1999, after the 1998 deletion of the *in lieu* language of section 667.71, subdivision (c), and the *Johnson* precedent is therefore not directly applicable to this case. The issue presented is whether the deletion of the *in lieu* language from section 667.71, subdivision (c) expressed a legislative decision to change sections 667.61 and 667.71 from alternative sentencing schemes to cumulative sentencing schemes. We conclude that the Legislature did not impose cumulative sentencing schemes and that the one strike law and the habitual sexual offender law continue to be alternative sentencing schemes: a sentence may be imposed under one of the sentencing schemes, but not both, and the decision to choose which sentencing scheme to impose is within the reasonable discretion of the sentencing court.

We reach our conclusion for two reasons. First, the available legislative history of the 1998 amendment to section 667.71, subdivision (c) expressed concern that by giving the prosecutor alone the choice of sentencing under either section 667.61 or section 667.71, the statute was subject to challenge as a violation of the separation of powers provisions of the California Constitution under the analysis of *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. Furthermore, the available legislative history contains no mention of an intention to amend section 667.71, subdivision (c) for the purpose of adopting cumulative sentencing schemes for the one strike and the habitual sexual offender laws. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1290 (1997-1998 Reg. Sess.) as amended Aug. 24, 1998, p. 2; see also *People v. Johnson, supra,* 96 Cal.App.4th 188, 206, fn. 11.)

Second, the change from alternative to cumulative sentencing schemes would be a significant change in the law, a change of sufficient significance that, if intended, would have been included in the legislation as well as in the legislative history materials. It appears, therefore, that the purpose of the 1998 deletion of the *in lieu* language from section 667.71, subdivision (c) was to obviate the separation of powers problem discussed in *Romero* without changing the alternative nature of the section 667.71 and section 667.61 sentencing schemes.

### E. *The Required Sentence*

■ When a single act is punishable under multiple statutes, the appropriate procedure is to sentence the defendant under each of the alternative statutes and then stay execution of sentence on all but one of those statutes. (*People v. Deloza* (1998) 18 Cal.4th 585, 592 [76 Cal.Rptr.2d 255, 957 P.2d 945] [where § 654 applies, sentence for one conviction is to be imposed and sentence on the other is imposed and then stayed]; *People v. Eck* (1999) 76 Cal.App.4th 759, 762-764 [90 Cal.Rptr.2d 594] [same approach used when the act subjects defendant to multiple enhancement statutes].) The statutory bar against multiple punishments for the same act is subject to the requirement that a defendant "shall be punished under the provision that provides for the longest potential term of imprisonment." (§ 654, subd. (a).) Accordingly, a court must stay execution on all but the sentence providing for the longest term of imprisonment.

■ However, section 654 does not apply to alternative sentencing schemes. (*People v. Johnson, supra,* 96 Cal.App.4th 188, 207-209; *Murphy, supra,* 25 Cal.4th 136, 154-156.) Under circumstances in which the alternative sentencing schemes of section 667.61 and 667.71 apply, the sentencing court has discretion to choose one of the sentencing schemes and then must strike or dismiss, rather than stay, the sentence under the other. (*Johnson,* at pp. 208-209.)

Here, the true finding on the section 667.71 allegation enables the court to impose on that finding a sentence of 85 years to life, consisting of a 25-year-to-life term under section 667.71, subdivision (b), which term would, under *Murphy,* be tripled under the three strikes law based on Snow's two prior strike convictions, plus a 10-year consecutive term for the two prior serious felony convictions under section 667, subdivision (a)(1). The true finding on the section 667.61 allegation also enables the court to impose on that finding a sentence of 85 years to life, consisting of a 25-year-to-life term under section 667.61, subdivision (a), which term would be tripled under the three strikes law based on Snow's two prior strike convictions, plus a 10-year consecutive term for the two prior serious felony convictions. The sentencing court in its reasonable discretion, with reasons stated on the record, must choose which of the section 667.61 or section 667.71 sentencing schemes is to be imposed. The sentencing scheme not imposed is to be dismissed. ■ The trial court also has the discretion under section 1385 to dismiss one or more of the prior serious or violent felony conviction allegations under *People v. Superior Court (Romero), supra,* 13 Cal.4th 497. ■ Here the sentence under the one strike law and habitual sex offender law is the same. Because the trial court stayed

execution of the sentence under the habitual sex offender law, we presume on a remand it would dismiss that true finding. To avoid needless further judicial proceedings, we vacate the habitual sex offender true finding.

## IV.

### CONSTITUTIONAL CHALLENGE TO THE SENTENCE*

. . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The opinion of this court filed February 15, 2002, is vacated. The true finding under section 667.71 is stricken. The judgment is otherwise affirmed.

Benke, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied February 5, 2003, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 16, 2003.

---

*See footnote 1, *ante*, page 271.