[No. A114767. First Dist., Div. Three. Feb. 15, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES BYRD McQUEEN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts A. and B. and D. of the Discussion.

**COUNSEL**

Maribeth Halloran, under appointment by the Court of appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Seth K. Schalit, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HORNER, J.**[*]—Defendant and appellant James Byrd McQueen appeals his jury trial convictions and the sentence imposed for multiple sexual offenses against two minors. Defendant contends that (1) the trial court abused its discretion under Evidence Code section 352 by admitting photographic evidence of the crimes; (2) the court failed to instruct sua sponte on duplicate counts; (3) the trial court erred by staying rather than dismissing sentence under the habitual sexual offender law (Pen. Code, § 667.71);[1] and (4) the sentence imposed of 800 years to life is grossly excessive and violates both the Eighth Amendment of the United States Constitution and article I, section 17 of the California Constitution. Notwithstanding the length of defendant's sentence, we affirm.

---

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Further statutory references are to the Penal Code unless otherwise noted.

FACTS & PROCEDURAL BACKGROUND

The information filed on December 8, 2005, charged defendant as follows: counts 1 through 9—lewd acts upon No. 1, a child under the age of 14 years, committed between January 1, 1999, and April 23, 2001 (§ 288, subd. (a)); count 10—distribution or exhibition of lewd material to a minor (§ 288.2); count 11—indecent exposure with a prior such conviction (§ 314); count 12—lewd act upon John Doe No. 2, a child under the age of 14 (§ 288, subd. (a)). The information also alleged: (a) Defendant is a habitual sexual offender (§ 667.71) based on a prior conviction on seven counts of lewd acts upon a child in 1988; (b) as to counts 1, 2, 3, 4, 5, 6, 7, 8, 9, and 12, on account of his prior 1988 convictions for lewd acts upon a child, defendant is subject to section 667.61, subdivisions (a) and (d), which specifies a sentence of 25 years to life (one strike law); (c) as to counts 1, 2, 3, 4, 5, 6, 7, 8, 9, and 12, on account of the fact defendant committed the crimes in this case against more than one victim, defendant is subject to section 667.61, subdivision (b), which specifies a sentence of 15 years to life; (d) as to all 12 counts, on account of his prior 1988 conviction on seven counts of lewd acts upon a child (§ 288, subd. (a)), defendant is subject to the three strikes provisions of section 667, subdivisions (b) through (i) (three strikes law).

On June 28, 2006, jury selection was completed and the prosecution began its case. The following evidence was adduced at trial from the testimony of the victims:[2] Paul Doe (Doe No. 1 in the information) testified he met defendant at his father's place of work in 2000, when he was about 11 years old. Defendant was a good friend of the family and became "a very close friend" to Paul. After a time, Paul started going to defendant's house because defendant was training him to build computers. Paul went to defendant's house "close to 30" times, and sometimes he spent overnights there on the weekend. On one occasion, when he was about 11 years old and in sixth or seventh grade, Paul was staying at defendant's house and defendant turned on a pornographic Web site on his computer, proceeded to massage Paul's shoulders, and worked "his way slowly down and grabbed my penis and continued to masturbate me." The pornographic video playing on the computer showed a male and female engaged in sex. Paul felt confused, scared and did not want to say anything. Defendant then performed oral sex on Paul. Next, defendant asked Paul to move to the bed and lie down, where defendant continued to perform oral sex on him before Paul asked him to stop. On this occasion, Paul did not ejaculate.

Paul recalled another occasion about a year later when he went to the hot springs at Calistoga with defendant. Before they left defendant's house for

---

[2] Further factual and procedural background is provided below where pertinent to the issue under discussion.

the hot springs, defendant performed oral sex on Paul while masturbating himself to ejaculation. Then they went to the hot springs, spent some time in a Jacuzzi and then returned to defendant's house. When they got back to the house, defendant did "the same thing that happened before we left"—performed oral sex on Paul while masturbating himself.

The last incident of this sort that Paul described took place at a hotel somewhere between Petaluma and Rohnert Park during the summer before his freshman year of high school when he was between 13 and 14 years old. Paul and defendant shared a room at the hotel because he was to help defendant set up his travel trailer the next day. Paul and defendant smoked marijuana together in the hotel room. Defendant set up his laptop computer and installed a pornographic DVD, which they watched. After they watched the DVD, defendant masturbated himself while performing oral sex on Paul. Defendant masturbated twice in front of Paul in the hotel room, once when Paul was sitting on the chair and once when Paul was next to him on the bed.[3]

Paul stated this sort of sexual conduct with defendant happened "about every time that I went over there [to defendant's house]," approximately 25 to 30 times, he estimated. Besides the one time in the hotel, everything took place at defendant's home. Paul described how defendant followed a routine in this sexual conduct—defendant would put on a pornographic video, then perform oral sex on Paul while masturbating himself in the process. Occasionally, Paul put his mouth on defendant's penis. Paul never told anyone about this because he was embarrassed, scared, confused and "it didn't seem right to say anything." Defendant told Paul the only reason the sexual acts he perpetrated on Paul were considered bad was because "society wouldn't accept it." Defendant took numerous photographs of himself and Paul engaging in the above described sexual activity.[4]

Paul's younger brother Matthew was 16 years old at the time of trial. Matthew also met defendant at his father's workplace when he was about 11 or 12 years old. Matthew went to defendant's home in Napa to "learn stuff about computers." Defendant taught Matthew about computers and also gave him a number of gifts, like a PalmPilot and a hand-held TV. Matthew went to

---

[3] This motel incident was effectively uncharged conduct, because the People did not base any of the counts of lewd conduct on this incident, see *post.*

[4] These photographs were found on a CD (compact disc) seized during a search of defendant's property in Arkansas, following his arrest in Missouri for distributing a controlled substance to a minor. On March 31, 2003, defendant was sentenced to eight years on that offense. The CD seized contained over 300 photographs, many of them sexual in content, depicting defendant with Paul, as well as with his younger brother Matthew. Defendant was brought from Missouri for trial in Napa County, California, under the Interstate Agreement on Detainers Act (18 U.S.C. Appen. § 1).

defendant's house about four or five times. On one of those occasions, when Matthew was about 11 or 12, they were in the living room of defendant's home and defendant asked him if he wanted a massage. Matthew thought it would be a normal massage. Matthew was lying on his front on the living room floor as defendant massaged him and removed his clothes. The massage lasted about an hour. During the massage defendant instructed Matthew to roll over onto his back and defendant masturbated him to ejaculation. Matthew felt confused and guilty after this incident. Defendant told Matthew he could tell his brother about it, but he never did. On another occasion, Matthew stayed with defendant in a tent trailer at a KOA campground. They smoked marijuana which defendant provided. At one point, defendant put his mouth on Matthew's penis. Matthew also testified that defendant showed him pornography on the computer while he was at defendant's house.[5]

Additionally, the People presented evidence of other sexual offenses committed by defendant via the testimony of Burl and Timothy.[6] Burl testified he and his family moved to Napa in fourth grade and he met defendant when he was between 11 and 13 years old. Defendant gave him rides on his motorbike and took him shooting. When they were not able to do those things, they mostly hung out in defendant's apartment. Defendant played pornographic videos, which Burl thought was "a really fun, cool thing, something that my mom and dad wouldn't let me do" and then "it kind of escalated from there." Burl stated that as they watched the pornographic videos, defendant would masturbate him or perform oral sex on him. Defendant also masturbated himself. Defendant took photographs of Burl naked. These sorts of events went on over a period of about a year. Burl never reported these incidents during this time. Later, he disclosed these events when contacted by a police officer when he was about 13 years old. On cross-examination, Burl stated he went to defendant's house about 100 times, and something sexual happened about 75 times.

Timothy was 29 years old at the time of trial. He stated he met defendant when he was nine or 10 and spent a lot of time with him, much of which revolved around guns. Defendant went to all Timothy's baseball games and volunteered to be the team photographer. Timothy told how defendant started massaging him while shooting because he found it hard to keep the guns stable. Then defendant started showing him pornography and "ventured into touching and having us take our clothes off and those kinds of things."

---

[5] Defendant vacated his house and left Napa in April 2001 because he was moving back to the Midwest.

[6] Out of respect for their privacy, we omit the surnames of these witnesses and refer to them subsequently by their first names only.

Timothy stated that defendant engaged him in sexual activities such as masturbation and oral copulation on "countless" occasions, and took photographs of him naked.

The jury was instructed on the morning of June 30, 2006, and delivered its verdicts that same afternoon. The jury found defendant guilty on all counts and also found all the special allegations true. On July 28, 2006, the trial court denied defendant's motion, filed pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628], to strike his priors and proceeded to sentencing. As to counts 1 through 9, the trial court found they involved the same victim on separate occasions, and additionally that count 12 involved a different victim on a separate occasion. On counts 1 through 9 and count 12, therefore, the trial court sentenced defendant to consecutive sentences of 25 years to life, pursuant to section 667.61, subdivision (a) (sex offenders—circumstances affecting sentence [the one strike law]), tripled to 75 years to life, pursuant to section 667, subdivision (e)(2)(i) (three strikes law). On each of those counts, the court also sentenced defendant to 25 years to life, pursuant to section 667.71, subdivision (b) (habitual sex offender law), tripled to 75 years to life pursuant to section 667, subdivision (e)(2)(i) (three strikes law). The trial court stayed the sentences imposed under section 667.71, subdivision (b) (habitual sex offender law), pursuant to section 654. On counts 10 and 11, the trial court sentenced defendant to consecutive sentences of 25 years to life, pursuant to section 667 (three strikes law). The total sentence thus imposed was 800 years to life. Defendant timely filed his notice of appeal on July 28, 2006.

DISCUSSION

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *Sentencing Under the Habitual Sex Offender Law*

(1)

On 10 counts (1–9 and 12) of the conviction, the trial court sentenced defendant to consecutive sentences of 25 years to life, pursuant to section 667.61, subdivision (a) (one strike law), tripled to 75 years to life, pursuant to section 667, subdivision (e)(2)(i) (three strikes law). On those same counts, the court also sentenced defendant under the habitual sex offender law (§ 667.71, subd. (b)) to 25 years to life, similarly tripled to 75 years to life

*See footnote, *ante*, page 27.

pursuant to the three strikes law. However, pursuant to section 654,[12] the trial court stayed the sentences imposed under the habitual sex offender law on those 10 counts. Defendant contends that the trial court erred by staying the sentences imposed under the habitual sex offender law pursuant to section 654. According to defendant, the trial court should have struck or dismissed the habitual sex offender sentence.

The Courts of Appeal have split on the proper procedure to be adopted when a defendant is open to sentencing under both the one strike law and the habitual sexual offender law. On the one hand, *People v. Snow* (2003) 105 Cal.App.4th 271 [129 Cal.Rptr.2d 314] (*Snow*), held that "[t]he sentencing court in its reasonable discretion, with reasons stated on the record, must choose which of the section 667.61 or section 667.71 sentencing schemes is to be imposed [and] [t]he sentencing scheme not imposed is to be dismissed." (*Snow, supra*, 105 Cal.App.4th at p. 283.) Defendant urges us to follow *Snow*. On the other hand, *People v. Lopez* (2004) 119 Cal.App.4th 355 [14 Cal.Rptr.3d 202] (*Lopez*), rejected the reasoning of *Snow*, and held that a defendant was not entitled to the striking of his sentence under the one strike law where he had been sentenced to a higher sentence under the habitual sexual offender law. (*Lopez, supra*, 119 Cal.App.4th at pp. 358, 361–364.) Respondent urges us to follow *Lopez*. As explained below, we conclude *Lopez* is the better reasoned case and will be guided by it.

(2)

In *Snow*, the defendant was convicted after a jury trial on one count of violating section 288, subdivision (a). In a bench trial, the court found true that the defendant had suffered a prior conviction of a lewd act bringing him within the one strike law; that he had suffered two prior serious felonies bringing him within the three strikes law; and that he was a habitual sexual offender. (*Snow, supra*, 105 Cal.App.4th at p. 274.) As pertinent here, the trial court sentenced him to 25 years to life under the one strike law, and tripled that to 75 years under the three strikes law. (*Ibid.*) Pursuant to section 654, however, the court stayed execution of sentence on the finding the defendant was a habitual sexual offender. (105 Cal.App.4th at p. 274.) On appeal, the defendant raises various sentencing issues, including "whether the [trial] court is required (or permitted) to sentence [defendant] under all three laws" the one strike, the three strikes and the habitual sex offender laws. In answer to that

---

[12] As pertinent here, section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

question, the *Snow* court concluded that a trial court is "precluded from sentencing [a defendant] under both the one strike and habitual sex offender laws." (*Id.* at p. 281.)

The *Snow* court noted when the one strike law was enacted in 1994, the habitual sex offender law was amended to provide that prosecutor could elect sentencing under the one strike law, if applicable, *in lieu* of sentencing under the habitual sex offender law. (*Snow, supra,* 105 Cal.App.4th at p. 281.) Accordingly, the court reasoned that until the "in lieu" language was deleted from the habitual sex offender law by amendment in 1998, "it appears that the [two] sentencing schemes . . . were alternate sentencing schemes." (*Id.* at pp. 281–282.) The court reasoned further that the 1998 amendment deleting the "in lieu" language did not reflect a legislative decision to change the sentencing schemes from alternate to cumulative. (*Id.* at p. 282.) The court reached that conclusion for two reasons: First, the legislative history of the 1998 amendment expressed a concern that the discretion accorded the prosecutor by the "in lieu" clause was subject to challenge as a violation of the separation of powers doctrine. (*Ibid.*) "Second, the change from alternative to cumulative sentencing schemes would be a significant change in the law, a change of sufficient significance that, if intended, would have been included in the legislation as well as in the legislative history materials." (*Ibid.*)

Having concluded the one strike and the habitual sex offender laws are two alternate sentencing schemes, the *Snow* court next considered the sentencing impact of that conclusion. The court noted that when "a single act is punishable under multiple statutes, the appropriate procedure is to sentence the defendant under each of the alternative statutes and then stay execution of sentence on all but one of those statutes" pursuant to section 654. (*Snow, supra,* 105 Cal.App.4th at p. 283.) However, because "section 654 does not apply to alternative sentencing schemes," the trial court must, in the exercise of its discretion, "choose one of the sentencing schemes and then must strike or dismiss, rather than stay, the sentence under the other." (*Ibid.*) Thus, the *Snow* court concluded as follows: "Here the sentence under the one strike law and habitual sex offender law is the same. Because the trial court stayed execution of the sentence under the habitual sex offender law, we presume on a remand it would dismiss that true finding. To avoid needless further judicial proceedings, we vacate the habitual sex offender true finding." (*Id.* at pp. 283–284.) If *Snow* controlled here, then we would have to do more than defendant requests: Defendant asks that under *Snow* we dismiss or strike the habitual sex offender sentence, but *Snow* did more than that—it actually struck *the true finding* that defendant was a habitual sex offender.

In *Lopez,* a jury found the defendant guilty on two counts of lewd conduct in violation of section 288, subdivision (a), among other crimes. In addition,

the defendant's admissions brought him within the scope of the one strike law, the habitual sex offender law and the three strikes law. (*Lopez, supra*, 119 Cal.App.4th at p. 358.) As pertinent here, the trial court sentenced Lopez on the section 288 counts to 25 years to life under the habitual sexual offender law, doubled to 50 years under the three strikes law, and stayed one of the 50 year sentences pursuant to section 654. On appeal, the defendant, relying on *Snow*, contended that after it sentenced him under the habitual sexual offender law, the trial court erred by failing to dismiss or strike the true finding on the one strike special allegation. (*Lopez, supra*, 119 Cal.App.4th at pp. 358–359.)

■ The appellate court noted: "Both the one strike law and the habitual sexual offender law are alternative sentencing schemes for specified sexual offenses, including—as here—nonforcible lewd conduct with a child under 14. (Pen. Code, §§ 667.61, subd. (c)(7), 667.71, subd. (c)(4).) The habitual sexual offender law provides for a sentence of 25 years to life when the defendant has previously been convicted of a specified sexual offense." (*Lopez, supra*, 119 Cal.App.4th at p. 360.) As the court noted, the one strike law, by contrast, takes a somewhat different approach by providing for sentences of 15 years to life or 25 years to life, depending on the special circumstances present. (*Ibid.*) However, the court noted two pertinent provisions within the one strike law: First, the special circumstances used to invoke the one strike law must be used to impose the term provided for under its provisions "*unless another law provides for a greater penalty.*" (*Id.* at p. 361, citing § 667.61, subd. (f), italics added.) Second, the one strike law specifically mandates: " 'Notwithstanding any other law, the court shall not strike any of the circumstances specified in subdivision (d) or (e).' (Pen. Code, § 667.61, subd. (f).)" (*Id.* at p. 361.) The court reasoned that the habitual sexual offender law provided for a greater penalty in this case: "Thus, the trial court could and did sentence defendant pursuant to the habitual sexual offender law; the true finding under the one strike law did not require it to do otherwise. There is no reason to strike this finding." (*Id.* at p. 362.) Indeed, the court noted that "[s]triking the multiple-victim special circumstance would violate th[e] express prohibition" against striking special circumstances set forth in section 667.61, subdivision (f). (*Lopez, supra*, 119 Cal.App.4th at p. 361.)

■ Furthermore, the *Lopez* court agreed with *Snow* that the two alternative sentencing schemes "are analogous to two alternative enhancements" but disagreed that the correct procedure is to strike the unused alternative. (*Lopez, supra*, 119 Cal.App.4th at p. 366.) Rather, the correct procedure is to "impose a sentence on the barred enhancement, but then stay execution of that sentence" under the authority of California Rules of Court, rule 4.447 (rule

4.447) (119 Cal.App.4th at p. 364).[13] Although a court has no authority to stay an enhancement under its "discretionary sense of justice"—it must either impose it or strike it in furtherance of justice under section 1385—"rule 4.447 has nothing to do with a *discretionary stay* of an enhancement," the court stated. (*Lopez, supra,* 119 Cal.App.4th at pp. 364–365.) Rather, "[i]t is limited to the situation in which an enhancement that *otherwise* would have to be either imposed or stricken is barred by an overriding statutory prohibition. In that situation—and that situation only—the trial court can and should stay the enhancement." (*Id.* at p. 365.) The court added: "A stay under rule 4.447 is not issued under Penal Code section 654. Nevertheless, it is analogous. In both situations, the stay has no express statutory basis. It is implied, so that a defendant who is subject to one of two alternative punishments will not be wrongly subjected to the other; if, however, one of the two punishments is invalidated, the defendant will still be subject to the remaining one." (*Ibid.*) The *Lopez* court criticized *Snow*, on this point, noting that "by holding that the unused finding must be stricken," it did not "deal with the risk that the used finding may be invalidated." (*Ibid.*)

Moreover, the court noted that "our Supreme Court has repeatedly indicated that—at least in the context of Penal Code section 654—it is the possibility that the actual sentence may be invalidated that requires the trial court to stay, rather than dismiss, the prohibited portion of the sentence. [Citations.] The Judicial Council relied on the same reasoning in adopting rule 4.447." (*Lopez, supra,* 119 Cal.App.4th at p. 365.) Staying rather than striking the sentence under the alternate sentencing scheme would also add clarity to the overall sentence, the court further opined: "We believe . . . a stay makes the trial court's intention clear—it is staying part of the sentence only because it thinks it must. If, on the other hand, the trial court were to strike or dismiss the prohibited portion of the sentence, it might be misunderstood as exercising its discretionary power under Penal Code section 1385. There is something to be said for clarity, particularly when there is always the possibility that the actual sentence may be struck down many years after the fact, by a different state or federal judge. There is also something to be said for having one clear rule for the trial court to follow whenever part of a sentence is barred." (*Id.* at pp. 365–366.)

██ Whereas we agree with *Snow* that the one strike law and the habitual sex offender law are alternate sentencing schemes (*Snow, supra,* 105

---

[13] This rule states: "No finding of an enhancement may be stricken or dismissed because imposition of the term either is prohibited by law or exceeds limitations on the imposition of multiple enhancements. The sentencing judge must impose sentence for the aggregate term of imprisonment computed without reference to those prohibitions and limitations, and must thereupon stay execution of so much of the term as is prohibited or exceeds the applicable limit. The stay will become permanent on the defendant's service of the portion of the sentence not stayed." (Cal. Rules of Court, rule 4.447.)

Cal.App.4th at p. 282), we disagree with its conclusion that if a sentence is imposed under one, then the true finding(s) under the other must be stricken or dismissed. Rather, we are persuaded by the reasoning in *Lopez* that the correct procedure when the two alternate schemes are implicated is to impose a sentence under both, but stay one of the sentences pursuant to rule 4.447, rather than dismissing or striking the true findings attendant to the stayed sentence. Indeed, the *Lopez* court noted that the trial court, rather than merely sentencing under only the habitual sex offender law, could have (as the trial court did here), "imposed a 'fallback' sentence under the one strike law, then stayed it, with the stay to become permanent upon defendant's service of his actual sentence under the habitual sexual offender law." (*Lopez, supra,* 119 Cal.App.4th at p. 366.) This we think is the more rational approach because, as the *Lopez* court persuasively detailed, it preserves the integrity of both sentencing schemes; promotes clarity in sentencing; and avoids confusion with respect to the trial court's exercise of discretion under section 1385; avoids the risk that "the used finding may be invalidated" (*Lopez, supra,* 119 Cal.App.4th at p. 365) at some future time; and avoids any violation of the one strike law's prohibition on striking special circumstances (§ 667.61, subd. (f)). In sum, we conclude the trial court correctly stayed the sentence imposed under the habitual sex offender law.[14]

D. *Cruel and Unusual Punishment**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[14] The trial court stayed the habitual sex offender sentence pursuant to section 654. As defendant points out, the Supreme Court in *People v. Murphy* (2001) 25 Cal.4th 136 [105 Cal.Rptr.2d 387, 19 P.3d 1129] (*Murphy*), held that section 654 did not prevent the accumulation of the defendant's sentence under both the three strikes law and the habitual sexual offender law because section 654 is concerned with the appropriate punishment for an act or omission that is punishable in different ways, whereas the three strikes law and the habitual sex offender law are concerned with "the *fact* of defendant's recidivism, not to an act or omission within the meaning of section 654." (*Murphy, supra,* 25 Cal.4th at p. 155.) The issue in this case is different. Unlike *Murphy*, where the defendant sought to invoke section 654 as a barrier to his *single* cumulated sentence, here defendant has been sentenced to *two* cumulated sentences under two parallel or alternate sentencing schemes, and the issue is whether the second must be stayed or stricken. Thus, we reject defendant's argument that under *Murphy* his second cumulated sentence cannot be stayed, because *Murphy* did not address that issue. (See *People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372] ["cases are not authority for propositions not considered . . ."].) Thus, we need not decide whether the trial court properly invoked section 654 to stay defendant's habitual sex offender sentence, because, as noted above, it was authorized to do so pursuant to rule 4.447.

*See footnote, *ante*, page 27.

## DISPOSITION

The judgment is affirmed.

McGuiness, P. J., and Siggins, J., concurred.

A petition for a rehearing was denied March 6, 2008, and appellant's petition for review by the Supreme Court was denied May 21, 2008, S162109.