Filed 11/22/13  P. v. Burgos CA2/5
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B238795 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA067011) |
| v. | |
| JOHNNY BURGOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed in part, modified in part, and remanded with directions.

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels, Eric E. Reynolds and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Johnny Burgos, as charged in count 2 of lewd conduct upon a child under 14 years of age. (Pen. Code,[1] § 288, subd. (a).) And, as to count 3, defendant was convicted of child molestation with a previous conviction. (§ 647.6, subds. (a)(1) & (c)(2).) The jury further found true prior conviction and prison term allegations under sections 667, subdivisions (a)(1), (b) through (i), 1170.12 and 667.5, subdivision (b) respectively. Defendant was sentenced to 35 years to life in state prison. We modify the judgment and remand with directions.

# II. THE EVIDENCE

## A. Prior Sex Crimes Evidence

### 1. A.R.

Defendant married S.B. on September 4, 1989. They subsequently had three sons. Also in 1989, defendant victimized seven-year-old A.R. The mother of A.R. was S.B.'s friend. That is, defendant, S.B.'s spouse, molested A.R., the daughter of his wife's friend. Defendant put his hands inside A.R.'s nightgown and put his finger inside her vagina. A.R. "freaked out" in her words. Defendant apologized and offered to let A.R. hit him. On October 16, 1989, defendant pled guilty to a violation of section 288, subdivision (a). On January 17, 1990, he was placed on five years' probation on the condition, among others, that he serve 360 days in the county jail. Despite therapy, A.R. had trouble sleeping, wet her bed until she was about 10, and could not be in the same

---

[1] All further statutory references are to the Penal Code except where otherwise noted.

2

room with men at school. A.R. testified, "If . . . a man came near me, I would freak out and start screaming."

2. S.B.'s Nieces—A.D. and Ar.D.

In 1994, defendant lived next door to S.B.'s brother. S.B.'s brother's family included two daughters, A.D. and Ar.D. During that year, defendant molested A.D. and Ar.D., both of whom were S.B.'s nieces. A.D. was five or six years old when defendant sexually abused her. In 1994, A.D. often spent time with her cousins, including spending the night at their house. Defendant would: wake A.D. up in the middle of the night; pull her pants and underwear down; pull his own pants down; and put his penis in her vagina. This happened five or six times. A.D. also saw defendant molesting Ar.D. Ar.D. was in the shower naked. Defendant was in the shower with her. A.D. saw Ar.D.'s legs spread apart. Also, A.D. saw Ar.D. moving back and forth while in the shower with defendant. A.D. thought she would get in trouble if she told anyone. So she stayed silent. But when A.D. was eight or nine years old, a family member asked whether there was anything going on. A.D. broke down and said yes. On cross-examination, A.D. said that after she was molested, she had nightmares, did not sleep well, and went to therapy.

Ar.D. was three and four years of age when defendant molested her. Defendant touched her private parts with his hands and his penis. He did it "a lot" of times. He made her touch his hard penis with her hands. Defendant touched Ar.D. when she was sleeping. Also sleeping in the room were Ar.D.'s sister and cousins. He did not put his penis inside her; he rubbed it against her vagina. He did that more than 10 times. He molested her once in the bathroom during a birthday party. Ar.D. knew defendant was molesting A.D. Ar.D. testified, "I was scared to look." After the molestation was reported, Ar.D. attended therapy.

Defendant was convicted on November 18, 1998, of two counts of lewd act upon a child in violation of section 288, subdivision (a). On December 2, 1998, he was

sentenced to 15 years in state prison. Defendant was released from prison on March 7, 2006. He committed the present offenses shortly after his release.

## B. The Present Crimes

### 1. The prosecution case

#### a. the victim, K.H.

The victim, K.H., met defendant in 2006, when she was seven years old. K.H. is the cousin of A.D. and Ar.D. Defendant is the biological father of K.H.'s three older brothers. There was no evidence K.H. knew defendant had molested A.D. and Ar.D. prior to the 2006 assault. Neither A.D. nor Ar.D. had ever told K.H. about the molestations. Nor did A.D. or Ar.D. tell K.H.'s brothers or their own siblings. Nor did K.H.'s parents ever tell her that defendant had been convicted of inappropriate sexual contact with her cousins.

Defendant and K.H. were alone in the kitchen together when he first molested her. Defendant was sitting on a stool. He unzipped his pants. He pulled down K.H.'s pants and her underwear. He told K.H. to sit on his lap. Defendant did not move, but K.H. felt defendant's penis pressing against her. The incident lasted about five seconds. Defendant told K.H. to get off his lap. He said he was sorry. Shortly thereafter, defendant and K.H. were lying on the bedroom floor or on a bed looking at a board game. Defendant put his hand in K.H.'s pants. He put his index finger in her vagina. He left his finger there for 10 minutes. K.H. was afraid defendant would hurt her if she told anyone. The next time K.H. saw defendant, she avoided him so he could not touch her.

K.H. did not reveal the molestation until 2010, when she was 11. This was four years after the molestation ended. By then the memory of what happened was making her so sad that she need to tell someone. So K.H. wrote S.B. a letter. This was because K.H. did not know how to tell S.B. about being molested by defendant. K.H. left the note

4

where S.B. would find it. K.H.'s father found it instead. K.H. did not want to tell the police. But sometime later, her father became intoxicated and told police officers what had happened. K.H. was interviewed by a female police officer and, later, by Detective Mark Leon. K.H. did not tell either one about what happened in the bedroom. She was more upset by the encounter in the kitchen. Later, K.H. met with Deputy District Attorney Pamela Revel and Detective Leon. At that meeting, K.H. described both incidents to them.

On cross-examination, K.H. said she did not know whether defendant's finger was actually inside her vagina. She did not know how that would feel. She had never looked at or touched her vagina. K.H. was also questioned about the note discovered by her father. As previously explained, the note was intended for K.H.'s mother. But the note was accidentally discovered by K.H.'s father. In that note, K.H. wrote that defendant put his finger in her "pee-pee" or vagina.

On redirect examination, Ms. Revel questioned K.H. further about the touching that occurred in the bedroom: "Ms. Revel: Your Honor, I'm kind of indicating just two fingers . . . [¶] . . . kind of to represent like what your pee-pee is. Okay? [¶] A Yes. [¶] Q Okay. And when you say that he touched you, did he touch you on the outside of your pee-pee? [¶] A Yeah. [¶] Q Okay. And then did he ever touch you on the inside of your pee-pee? [¶] A No. [¶] Okay. . . . [A]re my fingers kind of demonstrating to you they're kind of two sides? [¶] A Yes. [¶] Q And did he ever at all put his finger inside the two sides of you pee-pee? [¶] A No. [¶] Q And so he touched the outside? [¶] A Yes."

b. Detective Leon

A police report concerning the molestation of K.H. was prepared on September 27, 2010. Detective Leon interviewed K.H. at the police station on October 20, 2010. The interview was recorded. K.H. did not tell Detective Leon about what happened in the bedroom. The jury heard a recording of this first interview. Detective Leon was

5

present when Ms. Revel interviewed K.H. in November 2010. The interview was not recorded. During this second interview, K.H. talked about defendant's conduct in the bedroom.

### c. K.H.'s mother, S.B.

Shortly after S.B. married defendant, she learned he had been convicted of child molestation. S.B. had babysat for the child. Years later, defendant was arrested for molesting S.B.'s two nieces, her brother's daughters. Defendant was sentenced to prison. S.B. visited her husband in prison on most weekends. She brought their three boys with her until defendant was transferred. After the transfer, she went alone to visit defendant in prison. S.B. had been in a relationship with K.H.'s father, S.H., for more than 13 years. The relationship began three months after defendant went to prison. S.B. did not worry about the safety of her own children with defendant. S.B. testified, "I never thought about it."

In June or July 2010, S.B. received the note K.H. had written. It said defendant had touched K.H. when she was younger. There were details in the note, but S.B. did not remember them. S.B. did not remember the details because, "I rather would not have known." When asked what happened to the letter, S.B. testified, "[K.H.] told me she ripped up the letter." S.B. and K.H. talked about defendant's acts of molestation. When asked why the police were not thereafter notified, S.B. testified, "[K.H.] asked me not to." The police learned about the molestation only after S.H. got drunk and fought with S.B. S.B. then called the police. When the police arrived, S.H. told them about K.H.'s accusations. S.B. did not know whether she wanted defendant to be prosecuted because she was concerned about her sons.

On cross-examination, S.B. testified that K.H. had seen defendant after the sexual abuse occurred. K.H. would hug defendant when she saw him. K.H. never voiced any displeasure or concern about defendant. K.H. never said she was afraid of him or that she did not want to see him. K.H. did not shrink from touching him. The last time K.H. had

seen defendant was in Las Vegas, between 2008 and 2009.  There had not been any change in K.H.'s behavior after defendant came back into their lives.  K.H. had gained weight due to inactivity.  But she did not exhibit any bed-wetting, vaginal infections, sexual acting out, or withdrawal from the family.  Although K.H. knew defendant had been in prison, she never asked why he had been incarcerated.  S.B. never put K.H. in therapy.  This was because K.H. did not want to go to therapy.  K.H. only mentioned one incident in her written note.  She said defendant asked her to sit on his lap.  K.H. told S.B. that defendant opened his pants.  The note did not include anything about defendant touching her or taking her clothes off.

### d.  S.H.

S.H. had never seen defendant alone with K.H.  The only time defendant was alone in a room with K.H., S.H. was nearby on the porch.  K.H. would not talk to S.H. about the molestation.  S.H. did not notice any behavioral changes in K.H. after defendant's release from prison.  K.H. never said she did not want to be around defendant.

### 2.  The defense case

Defense counsel, Christine Field, produced a kitchen stool.  K.H. testified it was similar in height to the one defendant sat on when he molested her in the kitchen.  Defendant sat on the stool in the jury's presence.  Ms. Field subsequently argued to the jury that given defendant's obesity, he would not have been able to sit on the stool, unzip his pants, and remove his penis.

## III.  DISCUSSION

### A.  Evidence Code Section 1108

Defendant argues the trial court abused its discretion when it admitted prior victim testimony under Evidence Code section 1108 (section 1108).  Section 1108, subdivision (a) states, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  Our Supreme Court has held, "Available legislative history indicates section 1108 was intended in sex offense cases to relax the evidentiary restraints [Evidence Code] section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility."  (*People v. Falsetta* (1999) 21 Cal.4th 903, 911; see *People v. Villatoro* (2012) 54 Cal.4th 1152, 1174.)  Further our Supreme Court held, "In exercising [the Evidence Code section 352] discretion as to a sexual offense, 'trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charge offense, it's likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.'  (*People v. Falsetta, supra,* 21 Cal.4th at p. 917.)"  (*People v Loy* (2011) 52 Cal.4th 46, 61.)  Our review is for an abuse of the trial court's broad discretion.  (*Ibid.*; *People v. Thomas* (2011) 52 Cal.4th 336, 354-355.)

There was no abuse of discretion in the present case.  In response to the prosecution's section 1108 motion, the trial court carefully considered the relevant factors.  The trial court reasonably concluded the sex offenses defendant committed against A.D., Ar.D. and A.R. were similar to the crimes perpetrated on K.H.  The pattern

8

of defendant's conduct in his interaction with each of the young girls was consistent. Defendant's victims all visited his home. All were known to him through his wife, S.B. All were very young at the time of the molestation. In two of the four cases, he apologized to his victim. Defendant was in prison until 2006; he committed the present offenses shortly after his release. Presentation of the other sex offenses evidence was relatively brief, hence there was no undue consumption of time. And there was no significant potential the jury would be confused. The jury was informed of defendant's convictions for the prior offenses and of his incarceration history. The proper use of the evidence was addressed in jury instructions and the attorneys' arguments.

As noted, we have found no abuse of discretion in admitting the prior sex crimes evidence under section 1108. Thus, we need not consider whether it was also admissible under Evidence Code section 1101. Further, in light of our conclusion no abuse of discretion resulted under section 1108, defendant's constitutional due process and fair trial rights were not violated by the admission of the prior sex offense evidence. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 912-922; see *People v. Reliford* (2003) 29 Cal.4th 1007, 1009.)

### B. Defendant's New Trial Motion

Defendant argues he was entitled to a new trial. Ar.D. testified defendant: put his penis in her vagina; touched her "everywhere," including her vagina and buttocks; and rubbed his erect penis against her vagina. Defendant asserts he was surprised by that testimony because no such conduct was reflected in the police reports or preliminary hearing testimony. Defendant characterizes Ar.D.'s trial testimony as describing acts more inflammatory than the charged conduct. We review the denial of a new trial motion for an abuse of discretion. (*People v. Thompson* (2010) 49 Cal.4th 79, 140; *People v. Navarette* (2003) 30 Cal.4th 458, 526.) Our Supreme Court has held, "'"A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of

9

that discretion.'" (*People v. Lewis* (2001) 26 Cal.4th 334, 364; *People v. Hayes* (1999) 21 Cal.4th 1211, 1260-1261.)" (*People v. Thompson, supra,* 49 Cal.4th at p. 140.) Here, the trial court reasonably concluded Ar.D.'s testimony did not describe conduct that was more egregious than that K.H. testified to, nor was it unduly prejudicial. There was no abuse of discretion.

## C. Sentencing

### 1. Sections 667.61 and 667.71: pleading and proof

Defendant was sentenced in part under sections 667.61, subdivisions (a) and (d)(1) and 667.71 due to his prior lewd act convictions. (See *People v. McQueen* (2008) 160 Cal.App.4th 27, 37-38; *People v. Lopez* (2004) 119 Cal.App.4th 355, 365-366.) The jury made no specific finding of prior qualifying convictions under section 667.61, subdivisions (a) and (d)(1) or section 667.71. No objection was interposed to the allegation in the second amended information. Nor was an objection interposed to the verdict forms. Thus, any constitutional or statutory contention as to the findings' format is forfeited. (*People v. Bolin* (1998) 18 Cal.4th 297, 330; *People v. Toro* (1989) 47 Cal.3d 966, 976, disapproved on a different point in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.) Both statutes require that the qualifying facts be alleged in the information and admitted by the defendant or found true by the trier of fact. (§ 667.61, subd. (o); see *People v. Anderson* (2009) 47 Cal.4th 92, 102-103; *People v. Torres* (2011) 198 Cal.App.4th 1131, 1147.)

However, the second amended information alleges two prior qualifying convictions under section 667.61, subdivisions (a) and (d), and one prior qualifying conviction under section 667.71. The second amended information alleged: "[W]ithin the meaning of Penal Code sections 667.61(a) and (d), as to defendant, JOHNNY BURGOS, as to count(s) 2 that the following circumstances apply: lewd act upon child in violation of PC 288(a) on December 2, 1998 – LA029147 and lewd act upon a child in

10

violation of PC 288(a) on January 17, 1990." The second amended information further alleged, "pursuant to . . . section 667.71, as to count(s) 2[,] that the defendant was previously convicted of the crime of LEWD ACT UPON A CHILD in violation of . . . section 288(A) on DECEMBER 2, 1998 in the Superior Court of LOS ANGELES County." Thus the second amended information put defendant on notice that he was being charged under those provisions.

In addition, the jury found to be true the allegations that defendant sustained the prior qualifying convictions. The jury found as to counts 2 and 3, under sections 667, subdivisions (a)(1) and (b) through (i), 667.5, subdivision (b), and 1170.12, that defendant was convicted of violating section 288, subdivision (a) in case number 45679 on or about October 16, 1989, and in case number LA029147 (two counts) on or about November 18, 1998. The pleading and proof requirements of sections 667.61 and 667.71 were thus satisfied.


2. Sections 667, subdivision (e)(2)(A)(i) and 1170.12, subdivision (c)(2)(A)(i)


The jury found defendant had sustained three prior convictions within the meaning of sections 667, subdivisions (b) through (i) and 1170.12. In a sentencing memorandum, the prosecutor requested the trial court impose on count 2 a "minimum" sentence of 25 years to life for the violation of section 288, subdivision (a), plus 10 years under section 667, subdivision (a)(1). The trial court agreed and imposed the recommended sentence. The trial court stated it was imposing the 25-year-to-life sentence on count 2 under sections 667, subdivisions (b) through (i), 667.61, subdivisions (a) and (d), 667.71 and 1170.12. We asked the parties to brief the question whether the 25-year-to life sentence on count 2 should have been tripled pursuant to sections 667, subdivision (e)(2)(A)(i) and 1170.12, subdivision (c)(2)(A)(i). Unless the trial court exercises its section 1385, subdivision (a) (section 1385) discretion to strike all three prior conviction allegations, the count 2 25-year-to-life sentence must be tripled.

11

Defendant was subject to a sentence of 25 years to life under either section 667.61 or section 667.71. This is because he was convicted of lewd conduct in violation of section 288, subdivision (a) and had three prior lewd conduct convictions. (§§ 667.61, subds. (a), (c)(8) & (d)(1), 667.71, subds. (a), (b) & (c)(4).) The trial court was required to choose which of the alternative sentencing schemes—section 667.61 or 667.71—it would impose. As the Court of Appeal for the Fourth Appellate District, Division One, has held: "The sentencing court in its reasonable discretion, with reasons stated on the record, must choose which of the section 667.61 or section 667.71 sentencing schemes is to be imposed. The sentencing scheme not imposed is to be dismissed." (*People v. Snow* (2003) 105 Cal.App.4th 271, 283; but see contra, *People v. McQueen, supra,* 160 Cal.App.4th at p. 38 [stay, not dismiss]; *People v. Lopez, supra,* 119 Cal.App.4th at p. 365-366 [same].)

Moreover, as noted, defendant's 25-year-to-life sentence under either section 667.61 or 667.71 was subject to tripling. (§§ 667, subd. (e)(2)(A)(i); 1170.12, subd. (c)(2)(A)(i); *People v. Acosta* (2002) 29 Cal.4th 105, 118-128; *People v. Snow, supra,* 105 Cal.App.4th at pp. 278-284.) However, the trial court had the discretion under section 1385 to strike one or more of the three prior serious or violent felony conviction allegations in the furtherance of justice. (*People v. Carmony* (2004) 33 Cal.4th 367, 373; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, 529-530; *People v. Snow, supra,* 105 Cal.App.4th at p. 283.) The sentence imposed on count 2—25 years to life— was authorized only if the trial court struck all three sections 667, subdivisions (b) through (i) and 1170.12 prior serious or violent felony conviction allegations. We cannot presume the trial court did so. The trial court never expressly struck any prior conviction allegation. Moreover, the trial court did not set forth in an order entered upon the minutes any reason for striking a prior conviction allegation as required by section 1385, subdivision (a). Under these circumstances, we cannot presume the trial court exercised its section 1385 discretion. (See *People v. Williams* (1998) 17 Cal.4th 148, 162; *People v. Hunt* (1977) 19 Cal.3d 888, 896-897; *People v. Superior Court (Romero), supra,* 13 Cal.4th at p. 532; *People v. Orin* (1975) 13 Cal.3d 937, 943-944.)

12

Thus, upon remittitur issuance, the trial court is to proceed as follows as to count 2. Initially, the trial court must decide whether to sentence pursuant to sections 667.61 or 667.71. The trial court must then state its reasons on the record for its sentencing choice. Then, the trial court must decide whether to strike one or more of the prior serious or violent felony conviction allegations pursuant to section 1385. If the trial court chooses to strike a prior serious or violent felony conviction allegation, its reasons must be set forth upon the minutes as required by section 1385. If the trial court chooses to strike only one or none of the prior serious or violent felony conviction allegations, it must then proceed to impose a 75-year-to-life sentence. Nothing in this opinion should be construed as suggesting the existence of any mitigating factors which would warrant striking any prior serious or violent felony conviction allegation.

### 3. Count 3 prior serious felony conviction enhancement

The Attorney General argues the count 3 sentence must be enhanced pursuant to section 667, subdivision (a)(1). However, defendant was not convicted of a serious felony in count 3. Rather, defendant was convicted of a violation of section 647.6, subdivisions (a)(1) and (c)(2) which is not a felony enumerated in section 1192.7, subdivision (c). Thus, the 5-year section 667, subdivision (a)(1) enhancement may not be imposed on count 3 which is not a serious felony. (§ 667, subd. (a)(1); 3 Witkin & Epstein, California Criminal Law (4th ed. 2012) Punishment, § 405, pp. 625-626.) The authority cited by the Attorney General involves conduct described in prior convictions. Here, the issue is whether the charge in the present case is a serious felony which it is not.

13

4. Section 667.5, subdivision (b)

a. jury prior serious felony conviction and prison term findings

*i. section 667, subdivisions (b) through (i) and 1170.12 prior serious convictions*

Consistent with the second amended information's allegations, the jury found three prior serious felony conviction allegations to be true for purposes of sections 667, subdivision (b) through (i) and 1170.12. The prior conviction and prison term findings in the verdict referred to both counts 2 and 3. The jury found that defendant had been convicted in case No. 45679 in San Joaquin County of violating section 288, subdivision (a) on October 16, 1989. Also, the jury found that defendant had been convicted of violating section 288, subdivision (a) in Los Angeles County on November 18, 1998, in case No. LA029147. Finally, the jury found defendant had been convicted in a second count of violating section 288, subdivision (a) on November 18, 1998, in Los Angeles County in case No. LA029147.

*ii. section 667, subdivision (a)(1) prior serious conviction findings*

The jury found defendant had sustained two section 667, subdivision (a)(1) prior serious felony convictions. These two prior serious felony convictions were sustained in case Nos. 45679 on October 16, 1989, and LA029147 on November 18, 1998, in San Joaquin and Los Angeles Counties respectively. Only one section 667, subdivision (a)(1) prior serious felony conviction was alleged in case No. LA029147. This was because the two Los Angeles County serious felony convictions were sustained in the same case and on the same date. Thus, the Los Angeles County lewd conduct charges were not brought and tried separately within the meaning of section 667, subdivision (a)(1). (*In re Harris* (1989) 49 Cal.3d 131, 136-137; *People v. Deay* (1987) 194 Cal.App.3d 280, 286.)

*iii. section 667.5 prior prison term finding*

The jury found a single prior prison term allegation was true. The jury found that on November 18, 1998, defendant was sentenced to prison for a conviction of violating section 288, subdivision (a) in case No. LA029147. The verdict form does not identify which of the two section 288, subdivision (a) lewd conduct on a child counts in case No. LA029147 applied to the prior prison term finding.

b. count 2

As noted, defendant was convicted in count 2 of lewd conduct on a child in violation of section 288, subdivision (a). Lewd conduct on a child in violation of section 288, subdivision (a) is a violent felony. (§ 667.5, subd. (c)(6); 3 Witkin & Epstein, California Criminal Law, *supra,* Punishment, § 401, p. 619.) Therefore, given the prior violent felony prison term finding, defendant would typically be expected to serve three additional years. (§ 667.5, subd. (a); 3 Witkin, *supra,* Punishment, § 400, p. 617.) However, defendant contends the November 18, 1998 prison term resulted from his prior lewd conduct with a child conviction in case No. LA029147. Thus, defendant reasons that the prior prison term enhancement as to count 2 may not be imposed and must be stricken. (*People v. Jones* (1993) 5 Cal.4th 1142, 1150-1153; *People v. Perez* (2011) 195 Cal.App.4th 801, 805.) The Attorney General argues defendant was convicted of two section 288, subdivision (a) counts in case No. LA029147 and therefore may be sentenced on the prior prison term allegation. The Attorney General reasons that only a single section 667, subdivision (a)(1) prior serious felony conviction enhancement was imposed as a result of case No. LA029147. We agree with the Attorney General. (*People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1668-1669; *People v. Brandon* (1995) 32 Cal.App.4th 1033, 1055.)

The trial court had jurisdiction only to impose or strike the section 667.5, subdivision (a) three-year enhancement pursuant to section 1385, subdivision (a). (§ 12;

*People v. Bradley* (1998) 64 Cal.App.4th 386, 390-392; *People v. Harvey* (1991) 233 Cal.App.3d 1206, 1231.)  The imposition of a legally unauthorized sentence is an issue that can be raised for the first time on appeal by the Attorney General.  (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6; *People v. Scott* (1994) 9 Cal.4th 331, 354.)  As a result, upon remittitur issuance, the trial court is to either strike or impose the section 667.5 subdivision (a) three-year enhancement as to count 2.  If the trial court decides to strike the count 2 section 667.5, subdivision (a) three-year enhancement, it must comply with section 1385, subdivision (a).  If the trial court decides to strike the count 2 prior prison term three-year enhancement it must state its reasons for the exercise of its discretion in the minutes.  (*People v. Superior Court (Romero), supra,* 13 Cal.4th at p. 531; *People v. Orin, supra,* 13 Cal.3d at p. 944.)

### c.  count 3

As to count 3, defendant is subject to a 25-year-to-life indeterminate term pursuant to sections 667, subdivision (e)(2)(ii) and 1170.12, subdivision (c)(2)(ii).  Because counts 2 and 3 are both indeterminate sentences, the prior prison term enhancement must be imposed on both counts, absent an order striking the additional term.  (*People v. Williams* (2004) 34 Cal.4th 397, 401-405; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1559.)  Because count 3 is not a violent felony, only a one-year term may be imposed.  (§ 667.5, subd. (b); 3 Witkin, *supra,* Punishment, § 400, p. 618.)  Upon remittitur issuance, the trial court is to exercise its discretion as described in the immediately preceding paragraph and either impose or strike the one-year enhancement.

### 5.  Section 654, subdivision (a) (section 654)

We asked the parties to brief the question whether the trial court improperly stayed the sentence on count 3.  We apply section 654 to conceded facts as a matter of law.  (*People v. Perez* (1979) 23 Cal.3d 545, 552, fn. 5; *People v. Baylor* (1989) 207

16

Cal.App.3d 232, 235.) A misapplication of section 654 is a jurisdictional error which can be corrected for the first time on appeal on the court's motion. (*People v. Scott, supra,* 9 Cal.4th at p. 352, fn. 15; *People v. Welch* (1993) 5 Cal.4th 228, 235; *People v. Perez, supra,* 23 Cal.3d at pp. 549-550, fn. 3; *People v. Thompson* (1989) 209 Cal.App.3d 1075, 1078, fn. 1.) Section 654 did not preclude punishment for the sex offense charged in count 3. (See *People v. Scott, supra,* 9 Cal.4th at pp. 344, fn. 6, 346-347; *People v. Perez, supra,* 23 Cal.3d at p. 553; see also *People v. Jones* (2012) 54 Cal.4th 350, 374.)

The Court of Appeal has explained: "Section 654 provides that '[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.' The section 'applies when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction.' (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) Generally, whether a course of conduct is a divisible transaction depends on the intent and objective of the actor: 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' (*Neal v. State of California* (1960) 55 Cal.2d 11, 19[, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 334, 338].) [¶] However, the rule is different in sex crime cases. Even where the defendant has but one objective— sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished. (*People v. Perez*[, *supra,*] 23 Cal.3d [at p.] 553; e.g., *People v. Siko* (1988) 45 Cal.3d 820, 826 [separate punishment for lewd conduct impermissible where it was the very basis for his rape and sodomy convictions]; *People v. Greer* (1947) 30 Cal.2d 589, 604[, disapproved on another point in *People v. Fields* (1996) 13 Cal.4th 289, 308, fn. 6] [removal of victim's underclothing was merely incidental to subsequent rape and did not warrant separate punishment]; *People v. Madera* (1991) 231 Cal.App.3d 845, 855 ['section 654 would bar separate punishment for applying lubricant to the area to be copulated.'].)" (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005-1006 (*Alvarez*).) In fact, the general rule in

sex cases is that section 654 does not apply to separate sexual acts perpetrated against a victim occurring during a single encounter. (*People v. Harrison* (1989) 48 Cal.3d 321, 329-337; *People v. Perez*, *supra*, 23 Cal.3d at p. 551-552.)

More specifically, section 654 is inapplicable to preparatory acts committed prior to a separate act of intercourse against a minor. In *Alvarez*, *supra*, 178 Cal.App.4th at page 1006, the Court of Appeal explained the relevant rule: "But, section 654 does not apply to sexual misconduct that is 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim. (*People v. Madera, supra,* 231 Cal.App.3d at p. 855.) That makes section 654 of limited utility to defendants who commit multiple sex crimes against a single victim on a single occasion. As our Supreme Court has stated, '[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally "divisible" from one another under section 654, and separate punishment is usually allowed. [Citations.]' (*People v. Scott*[, *supra*,] 9 Cal.4th [at p.] 344, fn. 6.) If the rule were otherwise, 'the clever molester could violate his victim in numerous ways, safe in the knowledge that he could not be convicted and punished for every act.' (*Id.* at p. 347.) Particularly with regard to underage victims, it is inconceivable the Legislature would have intended this result. (*Ibid.*)"

In *Alvarez*, *supra*, 178 Cal.App.4th at page 1003, the defendant began the sexual encounter by forcibly kissing the victim. The defendant then forcibly inserted his finger into the minor's vagina. He was convicted of two counts of lewd conduct with a minor based upon the kissing and the digital penetration. The Court of Appeal held that each lewd act was separate and distinct and unnecessary to complete the other and no section 654 violation occurred. (*Id.* at pp. 1006-1007.) In *People v. Scott*, *supra*, 9 Cal.4th at page 348, cited in *Alvarez*, the defendant was convicted of fondling the minor and then having sexual intercourse with her. Our Supreme Court held that section 654 did not preclude multiple punishments. (*Ibid.*) Finally, in *People v. Madera*, *supra*, 231 Cal.App.3d at page 855, also cited in *Alvarez*, the minor, who was sleeping, was awakened by a lewd act. The exact scenario was described by the Court of Appeal thusly: "In the instant case, according to Josh, every incident or series of incidents

18

involved one undefined lewd touching, but not all incidents involved sodomy or oral copulation. The rubbing of Josh's penis was frequently the method Madera used to awaken the child. The fact that the touching or rubbing of Josh's penis preceded the oral copulation and/or sodomy, on the occasions when such additional violations occurred, does not establish that the touching of Josh's penis was merely incidental to or facilitative of the later acts. Certainly the acts denounced by sections 288a and 286 are capable of commission without an initial touching or rubbing of the victim's penis." *Alvarez*, *Scott* and *Madera*, are controlling authority on the section 654 issue.

Here, defendant was alone in the kitchen with K.H. Defendant unzipped his pants and pulled down her underwear. Defendant who was unclad from the waist down, then directed K.H. to sit on his lap. K.H. testified she felt defendant's penis pressing against her. She was then told to get off his lap where he apologized. Thereafter, they left the kitchen and walked into the bedroom. Defendant closed the door to the bedroom. At first, upon entering the bedroom, they looked at a board game. K.H. was showing defendant how to play the board game. While in the bedroom, defendant put his hand in K.H.'s pants and index finger into her vagina where it remained for 10 minutes. Under *Alvarez*, *Scott* and *Madera*, section 654 did not apply.

None of defendant's analysis concerning section 654 is meritorious. The prosecutor filed a sentencing memorandum which indicated that counts 2 and 3 merged. The trial court expressly relied upon the prosecutor's sentencing memorandum concerning the merger analysis. The merger doctrine is inapplicable in the section 654 context. (*People v. Miller* (1977) 18 Cal.3d 873, 884-887; *People v. Wein* (1977) 69 Cal.App.3d 79, 93; *People v. Mulqueen* (1970) 9 Cal.App.3d 532, 547.)

Further, nothing in the prosecutor's discussion concerning jury instructions and argument warrants a finding that section 654 applies. The jury was given a unanimity instruction. During the discussion among the trial court and counsel concerning the instructions on November 3, 2011, the following occurred: "The Court: . . . I have a unanimity instruction, . . . which is [CALCRIM No.] 3500. . . . [¶] . . . [[¶] The Court: Do you want to look at 3500? . . . I think these are 654, in other words, both counts relate

to the same conduct. [¶] [Deputy District Attorney Pamela] Revel: That's correct. [¶] The Court: And the only . . . thing is – it's the one that happened in the kitchen and the one that happened in the bedroom, so they have to find at least one of those counts or both unanimously. [¶] Ms. Revel: And the two charges were not filed based on two separate things. They were filed as all-encompassing, whatever happened in the apartment that night. [¶] . . . [¶] Ms. Revel: Both counts represent the same acts. [¶] The Court: Right. So I think this covers it, your concerns. You've reviewed it, 3500. It's requiring the jury to find at least one of the acts unanimously. I think that covers it."

In her closing argument to the jury, Ms. Revel stated: "[T]he judge gave you a unanimity instruction that, basically, the People's allegations as to counts two and three are that the incident that occurred that night in 2006 make up the crime. There's not – count two doesn't relate to the kitchen and count three to the bedroom. They both relate to both. You have to agree, if you convict the defendant, on which one. If you believe – if you only all believe that what happened in the kitchen is proof beyond a reasonable doubt, then you can convict on that. And if you only believe what happened in the bedroom was proof beyond a reasonable doubt, then you can still vote guilty. It's if you either don't think any of them happened, either, obviously, or if you can't agree unanimously on which one, some of you think it was the bedroom and some of you think it is the kitchen. So both counts relate to the incident of touching that happened that night."

Defendant relies on the prosecutor's somewhat confusing analysis. To begin with, the trial court never instructed the jury on the alternative liability theory articulated by the deputy district attorney. No such instructions were requested by the prosecutor. Moreover, the unanimity instruction did not require the jury to draw any such distinction. And the jurors were expressly instructed there were two separate offenses. The jurors were instructed on November 3, 2011: "'The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty of any of these offenses unless, for each offense, you all agree that the people have proved the defendant committed at least one of these acts and you all agree

20

on which act he committed. [¶] Each of the counts char[g]ed in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." Further, the jurors were ordered that they must follow the trial court's instructions and disregard any comment by an attorney which conflicted with them. It is presumed they obeyed the trial court's instructions in this regard. (*People v. Pearson* (2013) 56 Cal.4th 393, 477; *People v. Cain* (1995) 10 Cal.4th 1, 34.) The jurors returned two verdicts in compliance with the trial court's instructions thereby disregarding the confusing analysis of the deputy district attorney. Nothing in the offhand comment of the trial court about the relationship between the unanimity instruction and apparently section 654 changes matters. Once the separate verdicts were returned, the issue in terms of section 654 was what the jury found, not what the prosecutor charged, thought or said to the jurors. (See *People v. Assad* (2010) 189 Cal.App.4th 187, 200-201 [verdict forms identify what the jury found, not the charging instrument].)

Here, in counts 2 and 3, defendant committed two distinct sex crimes in two different locations—the kitchen and the bedroom. Neither sex offense was committed as a means of committing or facilitating the other. Nor were the counts 2 and 3 sex offenses incidental to the commission of any other. Therefore, section 654 did not preclude punishment for each of the sex offenses charged in counts 2 and 3. Upon remittitur issuance, the trial court is to impose either a concurrent or consecutive sentence on count 3. (§§ 667, subd. (c)(6), 1170.12, subd. (a)(6); *People v. Lawrence* (2000) 24 Cal.4th 219, 233.) Depending on the disposition of the prior conviction allegations, the minimum term is subject to doubling or tripling as discussed in part III. C. 2., *ante*.

### 6. Section 290.3: sex offender fine

The trial court imposed a $500 sex offender fine plus penalties. The current provision of section 290.3, subdivision (a) provides for a mandatory $500 sex offender fine in cases where the accused has previously been convicted of a specified offense. Defendant contends the imposition of the $500 sex offender fine violated the bar against

the ex post facto application of criminal statutes. Defendant contends the maximum fine that constitutionally may be imposed is in the sum of $300. We agree.

The second amended information alleges defendant committed the crime of lewd conduct between January 1, 2006 and December 31, 2007. Section 290.3 was amended in 2006. In 2006, the sex offender fine for recidivists was increased from $300 to $500. Enacted as urgency legislation, the effective date of the amendment which increased the sex offender fine for recidivists was September 20, 2006. (Stats. 2006, ch. 337, §§ 18, 62, pp. 2584, 2610, 2668.) In determining whether an ex post facto violation has occurred, we examine the evidence, not the allegations in the accusatory pleading. (*United States v. Brennan* (3rd Cir. 2003) 326 F.3d 176, 198; *United States v. Bakker* (4th Cir. 1991) 925 F.2d 728, 739.) For ex post facto purposes, the operative date is the last act or event necessary to trigger application of the new statute. (*People v. Grant* (1999) 20 Cal.4th 150, 157; *People v. Williams* (2004) 118 Cal.App.4th 735, 747.)

Here, there is no evidence the molestation of K.H. occurred on or after September 20, 2006. Rather, the evidence indicates K.H. was born in March, 1999. K.H testified she met defendant for the first time when she was seven years old. It was on this first occasion when she was seven years old that defendant molested K.H. She testified they first met in the summertime. K.H. was able to recall it occurred in the summertime because she would come home from school and then went swimming on most days. Thus, the incident occurred in the summer of 2006 when K.H. was seven years old. As noted, the effective date of the increase in the sex offender fine for recidivists was September 20, 2006. This was after the summer when K.H. was seven years old. We recognize the evidence is ambiguous and the issue is close. What persuades us is there is no testimony that the molestation occurred on or after September 20, 2006. Rather, there is only general testimony concerning the summer of 2006 which more likely is before September 20 of that year. Thus, the 2006 amendment to section 290.3, subdivision (a) cannot be retroactively applied to defendant. (*Collins v. Youngblood* (1990) 497 U.S. 37, 43; *Beazell v. Ohio* (1925) 269 U.S. 167, 169-170.) Upon remittitur issuance, the amount of the fine must be reduced to $300 plus penalties and a surcharge. Likewise, the abstract

of judgment is to be so modified and must list the applicable penalties and surcharge. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1372-1373; *People v. Sharret* (2011) 191 Cal.App.4th 859, 864.)

### 7. Presentence conduct credit

The trial court awarded defendant credit for 324 days in presentence custody, from March 7, 2011, to January 24, 2012. However, the trial court miscalculated defendant's conduct credit as 65 days. Defendant should have received only 48 days of conduct credit. (§§ 667.5, subd. (c)(6); 2933.1.) The judgment must be modified to so provide.

## IV. DISPOSITION

The judgment is modified to impose a $300 sex offender fine under Penal Code section 290.3, plus penalties and the surcharge and award defendant conduct credit of 48 rather than 65 days. Upon remittitur issuance, the trial court is to: resentence defendant on count 2 as discussed in section III.C.2 above; exercise its discretion to have the counts run concurrently or consecutively; and either impose or strike the prior prison term enhancements on counts 2 and 3. Also upon remittitur issuance, the superior court clerk must specify the penalties applicable to the sex offender fine in the minutes and in the abstract of judgment. The superior court clerk must then prepare an amended abstract of

judgment and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:



KRIEGLER, J.



KUMAR, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.