Filed 4/2/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re | B301891 |
| ANDRE LAMONT WOODS, | (Los Angeles County Super. Ct. No. NA037804) |
| On Habeas Corpus. | |

ORIGINAL PROCEEDING; petition for writ of habeas corpus, Judith L. Meyer, Judge.  Petition granted.

_____

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Philip J. Lindsay, Assistant Attorney General, Julie A. Malone and Jennifer O. Cano, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1999, a trial court sentenced Andre Lamont Woods to a term of 25 years to life under the "One Strike" law (Pen. Code,[1] § 667.61) plus a term of 57 years 4 months.  Woods was 19 years old when he committed his crimes.  On October 31, 2019, he filed a habeas corpus petition in this court in which he asserted that his sentence violates the Eighth Amendment proscription against cruel and unusual punishment.  After we denied the petition, the Supreme Court granted Woods's petition for review and transferred the matter to us with directions to issue an order to show cause (OSC) why Woods should not be entitled to relief on the grounds that the failure to provide him with a youth offender parole hearing violates his federal constitutional rights to equal protection of the laws and his right to be free from cruel and unusual punishment.

We vacated our prior order, issued an OSC, and appointed counsel for Woods.  The People filed a return to the OSC, and Woods filed a reply.

We agree with Woods that section 3051, subdivision (h), which excludes One Strike offenders from the procedures for youth offender parole hearings, violates his right to equal protection of the laws because such procedures are generally available to similarly situated offenders and no rational basis exists to deny them to One Strike offenders.  He is therefore entitled to a youth offender parole hearing during his 25th year of incarceration.  This determination renders moot Woods's argument that his sentence violates the Eighth Amendment's proscription against cruel and unusual punishment.

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

On the night of August 14, 1998, Woods was a passenger in a public transit bus driven by S.H. It appeared to S.H. that Woods was under the influence of alcohol. After all other passengers had left the bus, Woods told S.H. to pull the bus over and "shut it down." He said he had a knife and would kill her. S.H. pulled the bus to the side of the street and turned off the engine, causing the bus's lights to turn off. Woods directed S.H. to the back of the bus where he raped her, forced her to orally copulate him several times, robbed her of jewelry and money, raped her again, bit her breasts, and orally copulated her. When S.H. cried, Woods slapped her head. When S.H. asked if she could get dressed, Woods threw her underwear out a window. Woods made S.H. go to the front of the bus where he directed her to tell him how to start the bus. As he sat in the driver's seat with S.H. standing next to him, he put his fingers in her vagina, then forced his fingers into S.H.'s mouth. He threatened to kill S.H. if she reported the incident to the police. Woods began driving the bus and promptly crashed it into a building. The crash shattered glass on the bus, which cut S.H.'s back. S.H. escaped through a rear door on the bus.

Woods admitted to a police detective that he forced S.H. to engage in multiple sex acts with him and robbed her. At the detective's suggestion, Woods wrote a note in which he apologized to S.H. for "forc[ing] [her] to have sexual intercourse with [him]."

3

At trial, Woods's defense was that the distance he forced S.H. to move did not satisfy the asportation requirements for kidnapping or the One Strike law. (§ 667.61, subd. (d)(2).)[2]

A jury convicted Woods of one count of kidnapping to commit rape (count 1; § 209, subd. (b)(1)), two counts of forcible rape (counts 2 & 8; § 261, subd. (a)(2)), five counts of forcible oral copulation (counts 3, 4, 6, 7 & 9; former § 288a, subd. (c)),[3] and one count each of forcible sexual penetration with a foreign object (count 10; former § 289, subd. (a)), first degree robbery (count 5; § 211), making terrorist threats (count 11; former § 422), and unlawful taking or driving a vehicle (count 12; Veh. Code, former § 10851, subd. (a)). In connection with counts 2 through 4 and counts 6 through 10, the jury found true an allegation under the One Strike law that Woods kidnapped the victim and his movement of the victim substantially increased the risk of harm to her "over and above that level of risk necessarily inherent in the underlying offense." (§ 667.61, subd. (d)(2).)

_____

[2] The One Strike law does not define any crime, but rather " 'sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes' when a defendant commits one of those crimes under specified circumstances." (*People v. Acosta* (2002) 29 Cal.4th 105, 118.) Forcible rape, for example, is a crime enumerated within the One Strike law (§ 667.61, subd. (c)(1)) and is punishable under that law by imprisonment for 25 years to life when it is committed under specified circumstances (§ 667.61, subd. (a)), including the kidnapping of the victim where "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the [rape]" (§ 667.61, subd. (d)(2)).

[3] Effective January 1, 2019, former section 288a was renumbered as section 287. (Stats. 2018, ch. 423, § 49, p. 3215.)

At the sentencing hearing, Woods requested the court impose the low terms because he lacked a "serious record." The court rejected the request, stating that "the defendant exhibited a baseness and cruelty of human nature that is one of the worst [the court has] heard about. The aggravating circumstances in this case are so numerous, they far outweigh the fact that the defendant does not have a prior record."

Pursuant to the One Strike law, the trial court imposed a sentence of 25 years to life for the conviction on count 2, plus full-term consecutive sentences of eight years on each of counts 3 and 4 and counts 6 through 9. (See former §§ 667.61, subds. (a) & (g), former 667.6, subd. (c).) Under the determinate sentencing law, the court imposed a six-year term on count 5 (§ 213, subd. (a)(1)(B)), plus a consecutive two-year sentence on count 10 (§ 289, subd. (a)(1)(A)), and consecutive eight-month sentences on counts 11 and 12 (§§ 18, former 422, 1170.1, subd. (a); Veh. Code, § 10851, subd. (a)). Lastly, the court imposed and stayed a life sentence with the possibility of parole on count 1 (§ 209, subd. (b)(1)). The total prison term is 82 years 4 months to life.

In February 2000, we affirmed the judgment with directions to correct a sentencing error, which did not affect the length of the total term, and to correct certain misstatements in the abstract of judgment. (*People v. Woods* (Feb. 16, 2000, B130961) [nonpub. opn.].)

In 2019, Woods petitioned the superior court to hold an evidence preservation proceeding pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). On July 24, 2019, the court denied the petition on the ground that Woods does not qualify for a *Franklin* proceeding because he was sentenced under the One Strike law. Woods attempted to file a notice of appeal from

5

the court's ruling, but the superior court declined to file it, and no further action was taken. Woods thereafter filed the instant petition for writ of habeas corpus.

## DISCUSSION

Woods contends that his sentence of 82 years 4 months is unconstitutional under the Eighth Amendment and that his statutory ineligibility for a youth offender parole hearing under section 3051 violates his right to equal protection. We agree with his equal protection argument and conclude that he is entitled to a youth offender parole hearing during his 25th year of incarceration. As a result, his Eighth Amendment argument is moot.

### A.    *Background*

In *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), the United States Supreme Court held that the Eighth Amendment's proscription against cruel and unusual punishment prohibits the sentence of life without parole (LWOP) for a juvenile offender who did not commit homicide. (*Graham*, *supra*, at p. 74.) "As compared to adults," the court explained, "juveniles have a ' "lack of maturity and an underdeveloped sense of responsibility" '; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.' [Citation.]" (*Id.* at p. 68.) Juveniles are also "more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." (*Ibid.*) Juveniles thus "have lessened culpability [and] are less deserving of the most severe punishments." (*Ibid.*) The court further explained that sentencing juveniles to LWOP— " 'the second most severe penalty permitted by law' " (*id.* at p. 69)— cannot be justified based on legitimate penological goals of

6

retribution, deterrence, incapacitation, and rehabilitation. (*Id.* at pp. 69–71.)[4]

The high court emphasized that although "the Eighth Amendment prohibits a [s]tate from imposing [an LWOP] sentence on a juvenile nonhomicide offender, it does not require the [s]tate to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit [s]tates from making the judgment at the outset that those offenders never will be fit to reenter society." (*Graham, supra,* 560 U.S. at p. 75.) States must therefore provide juveniles who commit nonhomicide crimes "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Ibid.*)

In *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), our Supreme Court extended *Graham* to sentences that are the functional equivalent of LWOP: "[S]entencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy

---

[4] As our state Supreme Court recently stated, *Graham* was one of a series of United States Supreme Court and California Supreme Court decisions that reflect " 'a sea change in penology regarding the relative culpability and rehabilitation possibilities for juvenile offenders.' " (*O.G. v. Superior Court* (2021) 11 Cal.5th 82, 88.) This sea change is the result of "developments in scientific research on adolescent brain development confirming that children are different from adults in ways that are critical to identifying age-appropriate sentences." (*Ibid.*)

constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Caballero*, *supra*, at p. 268.) The court directed sentencing courts to "consider all mitigating circumstances attendant in the juvenile's crime and life, including but not limited to his or her chronological age at the time of the crime, whether the juvenile offender was a direct perpetrator or an aider and abettor, and his or her physical and mental development, so that it can impose a time when the juvenile offender will be able to seek parole from the parole board. The Board of Parole Hearings will then determine whether the juvenile offender must be released from prison 'based on demonstrated maturity and rehabilitation.' [Citation.]" (*Id.* at pp. 268–269.)

In a footnote, the *Caballero* court "urge[d] the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Caballero, supra,* 55 Cal.4th at p. 269, fn. 5.)

The Legislature responded the following year by enacting section 3051 and amending sections 3041 and 4801. (Stats. 2013, ch. 312, §§ 4, 5, pp. 2524–2525.) Section 3051 provides for a "youth offender parole hearing" for eligible persons after they have been incarcerated for 15, 20, or 25 years, depending upon the term of the offender's "controlling offense." (§ 3051, subds. (a) & (b).)[5] Indeed, the Legislature "went a step further" than what *Graham* or

---

[5] A controlling offense is "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

8

*Caballero* required by including "homicide defendants" within the statute's reach.  (*People v. Edwards* (2019) 34 Cal.App.5th 183, 194 (*Edwards*).)  Section 4801, subdivision (c) was added to require the parole board to "give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).)  By ensuring that those eligible for youth offender parole hearings "will have a meaningful opportunity for release no more than 25 years into their incarceration" (*Franklin*, *supra*, 63 Cal.4th at p. 277), section 3051 made it unnecessary for courts "to decide Eighth Amendment challenges to sentences of 25 years or more for a broad range of juvenile homicide and nonhomicide offenses" (*People v. Contreras* (2018) 4 Cal.5th 349, 381 (*Contreras*)).

As originally enacted, section 3051 made youth offender parole hearings available for persons who committed their controlling offense before age 18 years.  (Stats. 2013, ch. 312, § 5, p. 2525.)  In 2015, the Legislature amended the age threshold to 23 years (Stats. 2015, ch. 471, § 2, p. 4176) and, in 2017, increased it to 25 years (Stats. 2017, ch. 684, § 2.5, pp. 5125–5126).  Section 3051 now defines persons eligible for youth offender parole hearings to include any "person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a . . . term of 25 years to life." (§ 3051, subd. (b)(3).)  Woods's controlling offense is forcible rape under count 2, for which he was sentenced to 25 years to life.

Section 3051 expressly excludes, however, "cases in which sentencing occurs pursuant to [the "Three Strikes" law or the One Strike law, and] in which an individual is sentenced to [LWOP] for a controlling offense that was committed after the person had

9

attained 18 years of age." (§ 3051, subd. (h).)  Because Woods was sentenced pursuant to the One Strike law, he is statutorily ineligible for a youth offender parole hearing.

### B.    *Equal Protection*

Woods claims that section 3051 violates his right to equal protection by depriving him of a youth offender parole hearing while providing that benefit to first degree murderers.  We agree.

The federal and state constitutional guarantees of equal protection of the laws require, generally, that " ' "persons similarly situated with respect to the legitimate purpose of the law [should] receive like treatment." ' [Citation.]  'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  If this showing is made and, as here, the different treatment implicates no suspect class or fundamental right, a defendant must further show that there is no rational basis for the different treatment. (*Johnson v. Department of Justice, supra,* 60 Cal.4th at p. 881.)

### 1.    *Similarly situated classes*

Woods contends that he is similarly situated to defendants convicted of first degree murder for purposes of equal protection analysis.  The Attorney General disagrees, arguing that a violent sex offender, such as Woods, "is not similarly situated to a youth offender who does not commit such a crime, including one who commits murder"; Woods's crimes "are simply not 'the "same" crime' as murder."  We agree with Woods.  Although it is generally true that "[p]ersons convicted of different crimes are not similarly situated for equal protection purposes" (*People v. Macias* (1982) 137

Cal.App.3d 465, 473, italics omitted), "there is not and cannot be an absolute rule to this effect" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199, overruled on other grounds in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 875; accord, *People v. Doyle* (2013) 220 Cal.App.4th 1251, 1266 ["there may be times . . . when offenders who commit different crimes *are* similarly situated"]). The question is whether different persons " 'are similarly situated for purposes of the law challenged.' " (*Cooley v. Superior Court*, *supra*, 29 Cal.4th at p. 253; accord, *People v. Miranda* (Mar. 18, 2021, E071542) __ Cal.App.5th __ [2021 WL 1035458, p. *11] (*Miranda*).) "In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.)

Section 3051 generally provides parole hearings for youth offenders who have been incarcerated for a specified number of years. A "youth offender" for this purpose is a person who committed a controlling offense when the person was 25 years of age or younger and for which the controlling offense sentence is either a determinate term or an indeterminate term of no more than 25 years to life, or a person who committed the controlling offense as a juvenile and was sentenced for that offense to LWOP. (§ 3051, subd. (b)(1)–(4).) The statute thus provides relief to youthful offenders who commit first degree murder and are sentenced to 25 years to life, but excludes, among others, One Strike offenders. (§ 3051, subd. (h).)

The purpose of section 3051 is to provide youthful offenders with " 'a meaningful opportunity to obtain release' after they have . . . made ' "a showing of rehabilitation and maturity." '

11

[Citation.]" (See *Edwards*, *supra*, 34 Cal.App.5th at p. 198, quoting *Contreras*, *supra*, 4 Cal.5th at p. 381; see also Stats. 2013, ch. 312, § 1, p. 2522 ["[i]t is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established"].) This opportunity not only establishes a mechanism for "calibrat[ing] sentences in accordance with youthful offenders' diminished culpability" (*In re Williams* (2020) 57 Cal.App.5th 427, 435, review granted July 22, 2020, S262191), but also provides motivation for youthful offenders to focus on rehabilitation while serving their sentences. (*Id.* at p. 434.) " ' "An offender is more likely to enroll in school, drop out of a gang, or participate in positive programs if they can sit before a parole board sooner, if at all, and have a chance of being released." ' " (*Id.* at pp. 434–435, quoting Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1308 (2017–2018 Reg. Sess.) as amended Mar. 30, 2017, p. 3.)

The legal and scientific foundations supporting the rationale that youths have diminished culpability, such as a youth's " 'lack of maturity and an underdeveloped sense of responsibility' " (*Roper v. Simmons* (2005) 543 U.S. 551, 569), and the goal of calibrating punishment accordingly apply to both the youthful murderer and the youthful sex offender. The corollary principle that the increased maturity that comes with age will reduce the likelihood of repeat offenses also applies to both groups of offenders. The related goal of motivating imprisoned youthful offenders to rehabilitate also applies equally to both categories of youthful offenders. We therefore agree with Woods that, for purposes of section 3051, youthful One Strike offenders are similarly situated to youthful first degree murderers serving a 25 years to life sentence. (See

12

*Miranda, supra*, __ Cal.App.5th at p. __ [2021 WL 1035458, p. *11]; *Edwards, supra*, 34 Cal.App.5th at p. 195.)

Division Two of this district recently came to a contrary conclusion based on the general rule that offenders who commit different crimes are not similarly situated and the proposition that the different prisoners' "common interest in rejoining society" does not make them similarly situated. (*People v. Moseley* (2021) 59 Cal.App.5th 1160, 1169 (*Moseley*), petn. for review pending, petn. filed Feb. 25, 2021, S267309.) The *Moseley* court, however, failed to consider the purposes of section 3051 in evaluating whether the different classes of prisoners are similarly situated. (See *People v. McKee, supra*, 47 Cal.4th at p. 1202 [the initial inquiry is to determine whether different groups are similarly situated for purposes of the law challenged].) It is not, therefore, persuasive on this point. (See *Miranda, supra*, __ Cal.App.5th at p. __ [2021 WL 1035458, p. *11, fn. 13] [disagreeing with *Moseley* on this point].)

##### 2.    *Rational basis for different treatment*

To prove a violation of equal protection, it is not enough simply to show that similarly situated classes of people are treated differently. Where, as here, there is no suspect class or fundamental right at stake, a defendant must also show that there is no rational basis for the distinction. (*Johnson v. Department of Justice, supra,* 60 Cal.4th at p. 881.) " 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation]. It is immaterial

13

for rational basis review "whether or not" any such speculation has "a foundation in the record." ' [Citation.] To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' [Citation.]" (*Ibid.*)

Woods contends that there is no rational basis for depriving youthful One Strike offenders, such as himself, of a youth offender parole hearing when youthful first degree murderers have that opportunity under section 3051. He relies on *Contreras*, *supra*, 4 Cal.5th 349 and *Edwards*, *supra*, 34 Cal.App.5th 183.

In *Contreras*, two defendants were convicted of numerous sex offenses they committed when they were 16 years old. (*Contreras*, *supra*, 4 Cal.5th at pp. 357–358.) One defendant was sentenced under the One Strike law to two consecutive terms of 25 years to life; the other was sentenced under the One Strike law to two consecutive terms of 25 years to life, plus two 4-year terms. (*Id.* at p. 358.) The defendants challenged the sentences as unconstitutional under the Eighth Amendment and further argued that the exclusion of One Strike offenders from section 3051 violated their right to equal protection. (*Contreras*, *supra*, at pp. 359, 382.) The court held that the defendants' sentences violated the Eighth Amendment (*Contreras*, *supra*, at p. 379) and, therefore, the court did not need to address the equal protection issue. Nevertheless, the court concluded with an extensive "note" regarding the "defendants' contention that the current treatment of juvenile One Strike offenders is anomalous given that juveniles convicted of special circumstance murder and sentenced to LWOP

14

are now eligible for parole during their 25th year in prison." (*Id.* at p. 382.)

The different treatment of One Strike offenders, the court stated, "appears at odds with the high court's observation that 'defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers. . . . Although an offense like robbery or rape is "a serious crime deserving serious punishment," those crimes differ from homicide crimes in a moral sense.' [Citation.] In the death penalty context, the high court has said 'there is a distinction between intentional first[ ]degree murder on the one hand and nonhomicide crimes against individual persons, even including child rape, on the other. The latter crimes may be devastating in their harm, as here, but "in terms of moral depravity and of the injury to the person and to the public," they cannot be compared to murder in their "severity and irrevocability." ' " (*Contreras*, *supra*, 4 Cal.5th at p. 382.)

The *Contreras* court further observed that "no other provision of our Penal Code . . . treats a nonhomicide offense more harshly than special circumstance murder," and that it is "unaware of any other jurisdiction that punishes juveniles for aggravated rape offenses more severely than for the most aggravated forms of murder." (*Contreras*, *supra*, 4 Cal.5th at p. 382.) The court also noted the troubling anomaly that One Strike offenders who do not kill their victims after their sexual assaults could receive a de facto LWOP sentence while juveniles who do kill their sexual assault victims would be eligible for a youth offender parole hearing under section 3051. (*Ibid.*) Thus, the different treatment, the court suggested, " 'may remove a strong incentive for the rapist not to kill

the victim.' " (*Ibid.*, citing *Kennedy v. Louisiana* (2008) 554 U.S. 407, 445.)

In *Edwards*, the Court of Appeal addressed the equal protection issue left undecided in *Contreras*. In *Edwards*, a jury convicted two defendants of various sex offenses and other crimes, and found true certain One Strike allegations. (*Edwards*, *supra*, 34 Cal.App.5th at p. 189.) The defendants were 19 years old when they committed their crimes. (*Id.* at p. 186.) The court sentenced one defendant to a prison term of 129 years to life and the other to a term of 95 years to life. (*Id.* at p. 189.) On appeal, the defendants challenged the sentences on Eighth Amendment and equal protection grounds.

The Court of Appeal rejected the defendants' Eighth Amendment challenges in part because the defendants were 19 years old when they committed their crimes: "[A] defendant's 18th birthday marks a bright line, and only for crimes committed before that date can he or she take advantage of the [United States and California Supreme Courts'] jurisprudence in arguing cruel and unusual punishment." (*Edwards*, *supra*, 34 Cal.App.5th at p. 190, citing *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482.)

The *Edwards* court then addressed the equal protection claim and held that the categorical exclusion of youthful One Strikers from the parole eligibility that section 3051 makes available to first degree murderers "violates principles of equal protection and is unconstitutional on its face." (*Edwards*, *supra*, 34 Cal.App.5th at p. 199.) The court relied on *Contreras* and *Graham* for the proposition that defendants who commit nonhomicide crimes " ' "are categorically less deserving of the most serious forms of punishment than are murderers" ' " (*id.* At p. 197), and, therefore, there could

be no rational basis for denying youthful One Strike offenders the "parole hearings available even for first degree murderers." (*Ibid.*)

The Attorney General relies on *Williams, supra,* 57 Cal.App.5th 475, review granted. In *Williams*, the jury convicted the defendant of two counts of forcible rape, one count of forcible sexual penetration, and one count of forcible oral copulation, as well as robbery, burglary, making criminal threats, battery, assault with a deadly weapon, and false imprisonment. (*Williams*, *supra*, at p. 478.) The jury found true allegations that triggered application of the One Strike law. (*Ibid.*) The defendant was 24 years old when he committed his crimes. (*Id.* at p. 489.) The court imposed a sentence of 86 years 2 months in prison plus, under the One Strike law, an indeterminate term of 100 years to life. As in *Edwards* and the instant case, the defendant in *Williams* argued that the statutory exclusion of One Strike offenders from youth offender parole hearings under section 3051 violates equal protection principles. (*Williams*, *supra*, 47 Cal.App.5th at pp. 488–489.) The *Williams* court agreed with *Edwards* as to the applicable principles, but came to the opposite result, concluding "that the threat of recidivism by violent sexual offenders . . . provides a rational basis for the Legislature's decision to exclude [O]ne [S]trikers from the reach of section 3051." (*Williams*, *supra*, at p. 493.)

The *Williams* court relied on *People v. Bell* (2016) 3 Cal.App.5th 865 (*Bell*), review granted January 11, 2017, S238339, opinion vacated and cause remanded on June 13, 2018 for further consideration in light of *Contreras*, *supra*, 4 Cal.5th 349.[6]

---

[6] After the Supreme Court's remand in *Bell*, the Court of Appeal vacated its prior opinion and, without addressing the equal protection issue, remanded the case to the trial court for

17

According to the *Bell* court, the statutory exclusion of Three Strike offenders along with One Strike offenders from youth offender parole hearings (see § 3051, subd. (h)), indicates that "the Legislature had recidivism in mind when it excluded [O]ne [S]trike offenders." (*Bell*, *supra*, 3 Cal.App.5th at p. 879.)  The court also pointed to the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.), the Mentally Disordered Offenders Act (§ 2960 et seq.), and the Sex Offender Registration Act (§ 290 et seq.) to show that "the Legislature believes that most sex offenders pose a recidivism risk." (*Bell*, *supra*, at p. 879.)  That risk, the court concluded, provides a rational basis for excluding One Strike offenders from the benefit of section 3051. (*Bell*, *supra*, at p. 879.)  The *Williams* court agreed with *Bell*'s reasoning and concluded "that the risk of recidivism provides a rational basis for the Legislature to treat violent felony sex offenders sentenced under the [O]ne [S]trike law differently than murderers or others who commit serious crimes." (*Williams*, *supra*, 47 Cal.App.5th at p. 493, review granted; see also *Moseley*, *supra*, 59 Cal.App.5th at p. 1170, petn. for review pending [holding that concern for recidivism by sex offenders provides a rational basis for different treatment under section 3051].)[7]

We agree with *Edwards*.  Initially, we note that there is nothing in the legislative history to indicate that the Legislature excluded One Strike offenders based upon concerns that such

resentencing in light of *Contreras*. (*People v. Bell* (Aug. 2, 2018, B263022) [nonpub. opn.].)

[7] Justice Ashmann-Gerst dissented in *Moseley*, stating that she agreed with the analysis in *Edwards*. (*Moseley*, *supra*, 59 Cal.App.5th at p. 1170 (dis. opn. of Ashmann-Gerst, J.), petn. for review pending.)

youthful offenders were more likely to recidivate than other youthful offenders. In early versions of the bill that enacted section 3051, Third Strikers, but not One Strikers, were expressly excluded from the benefits of the proposed law. (See Sen. Bill No. 260 (2013–2014 Reg. Sess.) as amended Mar. 18, 2013, Apr. 4, 2013, May 24, 2013, June 27, 2013 & Aug. 12, 2013.) The exclusion of One Strikers was added in the final amendment to the bill and, so far as our examination of its history shows, done so without explanation or supporting evidence. (Assem. Amend. to Sen. Bill No. 260 (2013–2014 Reg. Sess.) Sept. 3, 2013.)

*Williams* is correct that a rational basis for unequal treatment may be found despite the absence of legislative history or supporting evidence, and that courts "may engage in ' " ' "rational speculation" ' " ' as to the justifications for the Legislature's decision." (*Williams, supra,* 47 Cal.App.5th at p. 493, review granted, quoting *People v. Turnage* (2012) 55 Cal.4th 62, 75.) The speculation that *Williams* and its progeny engaged in to justify the unequal treatment between first degree murderers and One Strike offenders—that the Legislature was concerned about recidivism among One Strike offenders—does not, however, withstand scrutiny.

First, denying parole eligibility for One Strike offenders with de facto LWOP terms, such as Woods, is contrary to the United States Supreme Court's and California Supreme Court's evaluations that nonhomicide crimes, no matter how heinous, are less deserving of the most serious forms of punishment than first degree murder. (See *Graham, supra,* 560 U.S. at p. 69; *Contreras, supra,* 4 Cal.5th at p. 366.) Granting youth offender parole hearings to first degree murderers while denying them to One Strike offenders, implies the opposite—that the first degree

19

murderer is more deserving of that opportunity than the One Strike offender.

Second, the recidivism explanation for differentiating between One Strikers and first degree murderers ignores the fact that, although " 'violent rapists do recidivate, and the state has a legitimate interest in severely punishing this crime,' " "murderers, too, recidivate, and the state has an interest in severely punishing the crime of murder." (*Edwards*, *supra*, 34 Cal.App.5th at p. 199.) As the *Edwards* court recognized, the equal protection inquiry is not whether the concern for sex offender recidivism justifies the denial of parole eligibility for sex offenders, but whether a theory of recidivism can rationally justify the categorical exclusion of One Strike offenders from parole hearings while first degree murderers are entitled to such hearings *when both classes of offenders recidivate.*

In *Williams*, the court failed to address this question. For the *Williams* court, it was enough for it to "believe that the threat of recidivism by violent sexual offenders . . . provides a rational basis for the Legislature's decision to exclude [O]ne [S]trikers from the reach of section 3051." (*Williams*, *supra*, 47 Cal.App.5th at p. 493, review granted.) But this ignores a critical part of the analysis. As *Edwards* observed, the task in an equal protection analysis is to compare similarly situated groups to determine whether a difference between them rationally supports unequal treatment under the law. (*Edwards*, *supra*, 34 Cal.App.5th at p. 199.) The threat that a class of offenders is likely to recidivate may well justify denying youth offender parole hearings to such likely recidivists. But where similarly situated classes of offenders *both* recidivate, recidivism alone offers no rational basis for unequal treatment.

Third, the theory that the threat of recidivism by One Strike offenders justifies their exclusion from youth offender parole hearings is inconsistent with the right of so-called "Two Strike" sex offenders to such hearings.[8]  Under section 667.71—the Two Strikes law—one is deemed a "habitual sexual offender" who commits one or more enumerated sex offenses after having been previously convicted of such an offense.  (§ 667.71, subd. (a); see generally Couzens & Bigelow, Sex Crimes:  Cal. Law and Procedure (The Rutter Group 2020) § 13:11.)  Because such an offender has, according to the Legislature, "an incurable predisposition to commit violent sex crimes" (Stats. 1993, ch. 590, § 1, p. 3096), the punishment for the second qualifying offense is imprisonment for 25 years to life (§ 667.71, subd. (b)).  Nevertheless, Two Strike offenders, unlike One Strikers, are not categorically excluded from the benefits of section 3051.  As Woods argues, because habitual sexual offenders convicted under the Two Strikes law may be eligible for youth offender parole hearings while those who have no prior convictions and are sentenced under the One Strike law are excluded, the risk of recidivism rationale for excluding One Strikers "falls apart."[9]

---

[8] The equal protection implications of different treatment under section 3051 between One Strike offenders and Two Strike offenders was not raised in Woods's petition or the People's return. Upon our request, the parties filed supplemental briefs on this question, which we have received and considered.

[9] We need not decide whether the different treatment between One Strike offenders and Two Strike offenders constitutes an equal protection violation; for present purposes it suffices for us to conclude that giving the right to benefits under section 3051 for known habitual sex offenders while denying such benefits for

The Attorney General points out that habitual sex offenders "in many cases may also be sentenced under the Three Strikes law" (see *People v. Murphy* (2001) 25 Cal.4th 136, 157–158), and that the prior offenses that trigger the application of the Two Strikes law are also serious or violent felonies for purposes of the Three Strikes law. Nevertheless, a person who qualifies as a habitual sex offender under the Two Strikes law will not necessarily be sentenced under the Three Strikes law. (See *People v. Hammer* (2003) 30 Cal.4th 756, 771 [where defendant could be sentenced under both the Two Strikes law and the Three Strikes law, court remanded for new sentencing hearing so that court could consider " 'whether to dismiss the prior conviction for Three Strikes sentencing purposes' "]; *People v. Murphy*, *supra*, at pp. 159–160 [where both Two Strikes law and Three Strikes law applied, court may strike prior conviction allegations under Three Strikes law]; accord, *People v. Snow* (2003) 105 Cal.App.4th 271, 283.) Thus, even if, as the Attorney General asserts, habitual sex offenders will "in many cases" be sentenced under the Three Strikes law, some undoubtedly will not; yet those habitual sex offenders who are sentenced under the Two Strikes law only will still be eligible for youth offender parole hearings under section 3051. The eligibility of some habitual sex offenders for early parole consideration when One Strikers are excluded from the same consideration further undermines the recidivist rationale for the disparate treatment between One Strikers and murderers.

Lastly, we note that providing early parole consideration to youthful murders but denying it to youthful One Strike offenders,

---

potential recidivists negates a recidivism rationale for the latter's exclusion.

creates an incentive for the rapist to kill his victim. (See *Contreras*, *supra*, 4 Cal.5th at p. 382; cf. *Kennedy v. Louisiana, supra,* 554 U.S. at p. 445.) Surely, the legislature cannot have intended to create such a perverse incentive.

In *Miranda*, *supra*, __ Cal.App.5th __ [2021 WL 1035458, pp. *12−13], the Court of Appeal for the Fourth District, Division Two recently agreed with *Williams* and declined to follow *Edwards*. The *Miranda* court explained that a rational basis could exist for treating similarly situated youth offenders differently because "the Legislature could have thought that extending section 3051 to [o]ne [s]trikers was too large an additional reform for the current moment." (*Miranda, supra,* at p. __ [2021 WL 1035458, p. *12].) The court added the "closely related" reason that "the Legislature may have selectively extended section 3051's benefits to some but not all as a means of testing whether youth offender parole hearings will benefit or harm society as a whole." (*Miranda, supra,* at p. __ [2021 WL 1035458, p. *13].)

The incrementalism or "testing" rationales, however, are not sufficient by themselves to sustain laws against an equal protection challenge. As the *Miranda* court indicated, a law that provides "eligibility for youth offender parole hearings [based] on a prisoner's height or hair color" would not have a rational basis and thereby violate equal protection principles. (*Miranda, supra*, __ Cal.App.5th at p. __ [2021 WL 1035458, p. *13].) An incremental approach or testing rationale that excludes prisoners with red hair as an incremental step or test toward the possibility of excluding prisoners with red or brown hair would fair no better against a constitutional challenge. Thus, there must, as the *Miranda* court acknowledged, still be a "rational basis for the classification itself," be it the prisoner's height, hair color, or

23

criminal offense.  (*Ibid*.)  That ultimate rational basis, the *Miranda* court concluded, is the rationale of reducing recidivism identified in *Williams*.  (*Ibid*.)  Because we reject the recidivism rationale of *Williams* for the reasons set forth above, we declined to follow *Miranda*.

We therefore conclude that the exclusion of One Strike offenders from eligibility for a youth offender parole hearing under section 3051, subdivision (h) violates the constitutional right to equal protection of the laws.

### C.  *Eighth Amendment*

Woods's Eighth Amendment argument is based on the theory that the line of cases prohibiting LWOP sentences and the functional equivalent of LWOP sentences when the defendant was a juvenile at the time he committed his crimes should apply to him even though he was 19 years old when he committed his crimes. (See, e.g., *Graham*, *supra*, 560 U.S. at p. 75; *Caballero*, *supra*, 55 Cal.4th at p. 268.)  He acknowledges that courts have rejected similar arguments.  (See, e.g., *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1032; *Edwards*, *supra*, 34 Cal.App.5th at p. 190; *People v. Perez* (2016) 3 Cal.App.5th 612, 617; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1220-1221; *People v. Argeta*, *supra*, 210 Cal.App.4th at p. 1482.)  He contends, however, that the neuroscientific foundation for sentencing juveniles less harshly than adults supports an extension of the principles established in *Graham* and its progeny.  "The juvenile brain," he argues, "does not magically transform into an adult brain when the clock strikes midnight on the defendant's 18th birthday."  Because we conclude that Woods is entitled to a youth offender parole hearing under section 3051, we do not decide whether the developing Eighth

Amendment jurisprudence concerning juveniles should be extended to those who commit crimes when they are 19 years old.

In *Franklin*, our state Supreme Court considered whether a term of 50 years to life—the functional equivalent of LWOP—imposed on a defendant who was 16 years old when he committed his crimes violated the Eighth Amendment. (*Franklin*, *supra*, 63 Cal.4th at p. 268.) The court held that the defendant's Eighth Amendment claim had been rendered moot by the enactment of section 3051. (*Franklin*, *supra*, at p. 280.) That statute, the court explained, "effectively reforms the parole eligibility date of a juvenile offender's original sentence so that the longest possible term of incarceration before parole eligibility is 25 years." (*Id.* at p. 281.) "Such a sentence is neither LWOP nor its functional equivalent." (*Id.* at p. 280.)

As explained in part B of the Discussion, *ante*, the exclusion of One Strike offenders violates the equal protection clause and Woods is therefore entitled to a youth offender parole hearing in his 25th year of incarceration. As a result, his sentence, like the juvenile's sentence in *Franklin*, is neither LWOP nor its functional equivalent. Therefore, even if, arguendo, we were inclined to extend the principles established in *Graham* and *Caballero* to 19-year-olds such as Woods, his claim that his sentence was unconstitutional is mooted by the applicability of section 3051. Accordingly, we do not address the question whether, in the absence of the availability of a youth offender parole hearing, Woods's sentence violates the Eighth Amendment.

After the parties filed their briefs in this case, we requested the parties file supplemental briefs discussing the impact, if any, on the issues in this case of the enactment of Assembly Bill No. 3234 (2019–2020 Reg. Sess.), amending section 3055. This amendment

25

provides for parole suitability hearings for inmates who are 50 years of age or older and have been incarcerated for at least 20 consecutive years.  (Stats. 2020, ch. 334, § 2.)  Both sides agree that this amendment does not impact Woods's equal protection argument, but disagree as to its effect on his Eighth Amendment argument.  Because we agree with Woods's equal protection argument and conclude that Woods is entitled to a youth offender parole hearing under section 3051 during his 25th year of incarceration—which will occur before he reaches the age of 50— and that his Eighth Amendment argument is therefore moot, we do not address whether the amendments to section 3055 impact the issues in this case.

**DISPOSITION**

The petition for writ of habeas corpus is granted. Woods is therefore entitled to a youth offender parole hearing during his 25th year of incarceration pursuant to section 3051 and without regard to section 3051, subdivision (h). The matter is remanded to the superior court in order for it to determine whether Woods has been provided with an adequate opportunity to make a record of information that will be relevant to the parole board (see *Franklin*, *supra*, 63 Cal.4th at p. 284; *In re Cook* (2019) 7 Cal.5th 439, 458–459) and, if not, to provide that opportunity.

<u>CERTIFIED FOR PUBLICATION</u>.

ROTHSCHILD, P. J.

I concur:

CHANEY, J.

27

BENDIX, J., Dissenting.

"How much rape is there? There is general agreement that all official or publicly ascertained rates are underestimates, but no one yet knows how much higher the true rate is."[1]

Petitioner Andre Lamont Woods, then 19 years old, raped and molested a female bus driver at knifepoint several times while kidnapping her and forcing her into a more secluded location. The trial court sentenced Woods to 25 years to life under the "One Strike" law (Pen. Code,[2] § 667.61), plus a term of 57 years to life. Woods raises two constitutional challenges to his sentence: Section 3051's exclusion of One Strike sex offenders from earlier parole consideration violates his equal protection rights; and committing him to prison until he is 89 years old violates the Eighth Amendment's prohibition against cruel and unusual punishment.[3] The majority concludes that section 3051's exclusion of One Strike sex offenders violates equal protection and thus, the majority does not reach Woods' Eighth Amendment challenge.[4]

---

[1] Gordon and Riger, The Female Fear (1989) 37.

[2] Undesignated statutory citations are to the Penal Code.

[3] Section 3051 grants certain eligible offenders a youthful offender parole hearing at a time earlier than the indeterminate term sentence would permit. (*People v. Franklin* (2016) 63 Cal.4th 261, 277–276.) Section 3051 excludes persons sentenced under section 667.61. (*People v. Moseley* (2021) 59 Cal.App.5th 1160 (*Moseley*), petn. for review pending, petn. filed Feb. 25, 2021, S267309.)

[4] Woods concedes that his Eighth Amendment challenge contravenes appellate precedent including *People v. Edwards*

There is a split of authority on whether section 3051's exclusion of One Strike offenders violates equal protection.[5]  I agree with the majority opinion authored by Division Two of our District in *Moseley*, concluding that exclusion of One Strike sex offenders from earlier parole consideration does not deprive them of equal protection of the law.  (*Moseley*, *supra*, 59 Cal.App.5th at p. 1162, petn. for review pending.)  Division Two held that excluding sex offenders from youth offender parole consideration was rationally related to a legitimate penal interest because of "significant public safety concerns," "including recidivism" by convicted sex offenders.  (*Id.* at p. 1170.)  I also agree with our colleagues in Division Two of the Fourth District in *People v. Miranda* (Mar. 18, 2021, E071542) ___ Cal.App.5th ___ [2021 Cal.App.Lexis 234] (*Miranda*), when they concluded, "[T]he Legislature appears to have excluded from early parole eligibility

_____

(2019) 34 Cal.App.5th 183, 186, 190 (*Edwards*):  "Woods recognizes that his argument has been rejected by other courts [citations], but contends that those cases were incorrectly decided or must be reconsidered in light of the advancement in research into brain science . . . ."  As Division Seven of our District recently reasoned, we are bound by authority from the United States Supreme Court and our high court rejecting that a bright line at 18 years of age is arbitrary.  (*People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1032, review den. Jan. 27, 2021, S265597 [noting "recent scientific and legal developments" criticizing such a bright line as arbitrary but noting it is up to the United States Supreme Court, the California Supreme Court, the Legislature, or the voters by initiative to change the law].)

   [5]  Compare *Edwards*, *supra*, 34 Cal.App.5th at page 198 with *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262191, and *Moseley*, *supra*, 59 Cal.App.5th 1160, petition for review pending, petition filed February 25, 2021, S267309.

those whom it saw as exceptionally likely to reoffend." (*Id.* at p. ___ [2021 Cal.App.Lexis, p. *34].)

Certainly, social science has influenced legislative acts and appellate jurisprudence as reflected in section 3051 itself and in the very appellate debate before us. Social science has produced statistics about recidivism by sex offenders that arguably would support both sides in this debate.

Surveyed rates of recidivism vary widely,[6] largely based on

---

[6] See, e.g., Langevin et al., *Lifetime Sex Offender Recidivism: A 25-year Follow-Up Study* (2004) 46 Canadian J. Criminology & Crim. Just. 531 (Langevin) [documenting that approximately three in five offenders "reoffended, using sex reoffence charges or convictions or court appearances as criteria, but this proportion increased to more than four in five when all offences and undetected sex crimes were included in the analysis," and concluding "[t]he typical known criminal career spanned almost two decades, indicating that sex offence recidivism remained a problem over a significant part of the offenders' adult lives," italics omitted]; *cf.* O'Hear, *Managing the Risk of Violent Recidivism: Lessons From Legal Responses to Sexual Offenses* (2020) 100 B.U.L.Rev. 133, 145, footnote 61 (O'Hear) [referencing a 2005 study of 30 states of rearrests within five years of release from prison for sexual assault offenders: 5.6 percent for sexual assault; 51.4 percent for public order offenses; 17.9 percent for property offenses; and 13 percent for drug offenses].

See also Bench and Allen, *Assessing Sex Offender Recidivism Using Multiple Measures: A Longitudinal Analysis* (2013) 93 Prison J. 411, 425 (Bench & Allen) ["Although more than 35 years of research indicates that the incidence of sex offender recidivism is not only low, but much lower than many other criminal offenses . . . . Nonetheless, it is important for public safety to continue efforts to identify the small group of sex offenders who will become chronic recidivists."]. But see Baker,

3

differing methodologies.[7]  There is scholarship documenting that juvenile sex offenders present a lower risk of recidivism than adult sex offenders.[8]  There is also scholarship maintaining the "essentially identical" correspondence between rapes committed by juvenile offenders and the rapes they commit as adults: "They selected similar victims in regard to their relative ages, sex, and social relationship," and "[t]hey committed similar acts with the same degree of aggression or violence."[9]  As noted above, social science literature also discusses the potential understating of recidivism rates by sex offenders because of the underreporting of

---

*Once a Rapist?  Motivational Evidence and Relevancy in Rape Law* (1997) Harv. L.Rev. 563, 578 (Baker:  *Once a Rapist*) [rejecting the theory that "rapists are more likely than other criminals to repeat their acts" and reporting that based on a 1989 Bureau of Justice study, "[o]nly homicide had a lower recidivism rate than rape"].

[7]  For example, they differ in the population sampled, what kind of treatment was available to the sampled population while in prison and after release from prison, the sex offender's age at the time of release from prison, and whether arrest reports, convictions, or other events were counted in measuring recidivism.  (See Bench & Allen, *supra*, at pp. 412–415, and Prentky et al., *Recidivism Rates Among Child Molesters and Rapists:  A Methodological Analysis* (Jan. 1997) Law and Human Behavior, Vol. 21, No. 6 [analyzing, inter alia, different methodologies in measuring recidivist rates and the resulting variance in those rates].)

[8]  See, e.g., O'Hear, at page 147, footnote 71.

[9]  Groth, Men Who Rape:  The Psychology of the Offender (1979) 183.

sex offenses like rape.[10]

It is possible that differences in the nature of some rape and murder crimes may also express themselves in rates of recidivism.  Rapes of female adults, although always intimate, can be impersonal.  The perpetrator may not even know his victim.  Social science literature explains that these instances of rapes may be grounded in a desire for control and power rather than a desire to harm a particular victim.[11]  Compare such a rape to a premeditated first degree murder, where the murderer deliberately targets a specific victim.  Such a murderer may never recidivate because the murderer's motivation would be based on that specific victim.  It is thus not surprising that at least one study reports that rape has a higher rate of recidivism than murder.[12]

I acknowledge that these statistical differences produced by varying methodologies may present a challenge to determining which data are more reliable or persuasive, particularly to someone like this dissenter with no expertise in statistics.  Given this debate in Academe, however, it would not be constitutionally irrational for the Legislature to find support in this social science

---

[10]  Langevin, *supra*, at page 535; Baker, *What Rape Is and What It Ought Not to Be* (1999) 39 Jurimetrics J. 233, 234–235 (Baker: *What Rape Is*); Baker: *Once a Rapist*, *supra*, at pages 579–580.

[11]  Baker: *What Rape Is*, *supra*, at pages 239–240.

[12]  See footnote 6, *ante*.  I acknowledge the exceptions to my hypothesis.  Certainly, there are murders where the perpetrator targets the victim, but may also recidivate, for example, in gang retaliation settings.

literature for excluding sex offenders from earlier parole consideration in the interests of public safety.[13]

The majority rejects the "recidivism rationale" in part because recidivist sex offenders sentenced under section 667.71, the so-called "Two Strikes" law (§ 667.71), are eligible for the benefits of section 3051, whereas One Strikers, who may have committed only one sex crime, are not. (Maj. opn. *ante*, at pp. 20–22.) Respectfully, I disagree. Those statutes are not the same, and it is arguably reasonable that the Legislature might have exempted defendants sentenced under one statute, but not the other, from earlier parole consideration under section 3051.

The Two Strikes law imposes a sentence of 25 years to life when a defendant convicted of a sex offense enumerated in the statute has previously been convicted of an enumerated offense. (§ 667.71, subds. (a)–(c).) The same may, in most cases, be achieved through the One Strike law, which similarly imposes a 25-to-life sentence on those who commit an enumerated sex offense and have suffered a previous conviction for an enumerated offense. (See § 667.61, subds. (a), (c), (d)(1).) The One Strike law goes further, however, by encompassing not only recidivist offenders, but also those who have not suffered a

_____

[13] As our high court recognized in *People v. Turnage* (2012) 55 Cal.4th 62, "[t]his standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*Id.* at pp. 74–75.)

previous conviction but whose current offense is a particularly heinous sex crime, for example, involving kidnapping, torture, great bodily injury, use of weapons, use of controlled substances, or multiple victims.  (*Id.*, subds. (d)(2)–(3), (6), (e)(3)–(4), (6).)

It would not be irrational for the Legislature, concerned with the potential for sex offenders in particular to recidivate, to focus on those offenders who have committed the most heinous sex offenses, and exempt them from the benefits of section 3051.[14]  At the same time, the Legislature reasonably could be less concerned with those convicted of less heinous sex crimes, and therefore allow for the possibility that those offenders might remain eligible for the benefits of section 3051.

Whether sex offenders would be eligible for early parole consideration under section 3051 largely would depend on decisions by the prosecutors and the trial court.  As the Attorney General points out and the majority acknowledges, anyone subject to sentencing under the Two Strikes law would also be subject to sentencing under the "Three Strikes" law (§§ 667, subds. (b)–(i) & 1170.12).  Defendants sentenced under the Three Strikes law are, like One Strikers, ineligible for the benefits of section 3051.  (§ 3051, subd. (h).)  Therefore a trial court may foreclose a Two Striker from section 3051 eligibility by also imposing a Three Strikes sentence.  Similarly, where the

---

[14] As the *Miranda* court observed after noting that those sentenced under the Three Strikes and One Strike laws are excluded from earlier parole consideration under section 3051, "[b]y excluding youth offenders convicted under either of these laws, the Legislature appears to have drawn a line at recidivism risk.  We cannot say that line was arbitrary or irrational." (*Miranda, supra,* ___ Cal.App.5th at p. ___ [2021 Cal.App.Lexis 234, p. *35].)

substantive provisions of sections 667.61 and 667.71 overlap, a prosecutor could foreclose section 3051 eligibility by charging a recidivist sex offender under the One Strike law's recidivism provisions rather than the Two Strikes law.

Of course, it is possible in a given case, that a Two Striker has committed crimes as heinous as those of a One Striker, or that someone convicted as a One Striker on the basis of recidivism is no different than someone convicted on that basis under the Two Strikes law.  As our Supreme Court has stated, however, " '[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.'  [Citation.]  'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citation], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citation]."  (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.)

For all these reasons, I would hold that the exclusion of One Strike sex offenders from earlier parole consideration under section 3051 does not deprive Woods of equal protection of the law.


BENDIX, J.